## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

SHANELL HODGES,                           Civil Action No.:
*On behalf of herself and*
*those similarly situated,*                HON.:

                          Plaintiff,

v.

77 GRANDVILLE, INC.,
a Michigan profit corporation, and
KRIS ELLIOTT and DAX HYLARIDES,
individuals,

                          Defendants.

_____

Bradley K. Glazier (P35523)
Robert M. Howard (P80740)
BOS & GLAZIER, P.L.C.
Attorneys for Plaintiff
990 Monroe Avenue, N.W.
Grand Rapids, MI 49503
(616) 458-6814

_____

### CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND

Plaintiff Shanell Hodges, by her counsel, Bos & Glazier, P.L.C., states her complaint

against defendant 77 Grandville, Inc., Kris Elliott, and Dax Hylarides as follows:

### INTRODUCTION

1.      Shanell Hodges, on behalf of herself and all similarly-situated individuals,

brings this action against defendants 77 Grandville, Inc., Kris Elliott, and Dax Hylarides.

Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on defendants'

willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages

00141102.WPD

and overtime as required by the Fair Labor Standards Act ("FLSA") and M.C.L. §408.414.

2.      Defendants operate the Grand Woods Lounge - a restaurant and bar in Grand Rapids, Michigan.

3.      Defendants 77 Grandville Inc., Elliott, and Hylarides (collectively "Grand Woods Lounge") have repeatedly and willfully violated the Fair Labor Standards Act and the Workforce Opportunity Wage Act, M.C.L. §408.414, by failing to adequately pay employees for all hours worked, by requiring workers to share tips with managers and kitchen staff, and failing to pay overtime for hours worked in excess of forty hours per week.

4.      All bartenders and servers at the defendants' business, including plaintiff, have been subject to the same employment policies and practices, including policies and practices with respect to wages, tips, and overtime.

5.      Plaintiff brings this action on behalf of herself and similarly situated current and former bartenders and servers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by defendants.

6.      Plaintiff also brings this action on behalf of herself and similarly situated current and former bartenders and servers in Michigan, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of M.C.L. §408.414.

## JURISDICTION AND VENUE

7.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over plaintiff's FLSA claims.

8.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over plaintiff's Michigan law claims.

00141102.WPD                                2

9.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because the parties reside in this district and a substantial part of the events giving rise to the claims raised occurred in this district.

## PARTIES

10.     Plaintiff Shanell Hodges resides in Grand Rapids, Michigan, and worked within the boundaries of the Western District of Michigan.

11.     Plaintiff was an "employee" of all of the defendants as defined in the FLSA, the M.C.L. §408.414.

12.     Plaintiff has given written consent to join this action. (Exhibit 1).

13.     Defendants have employed plaintiff and similarly situated bartenders and servers.

14.     Defendants suffer or permit plaintiff and other bartenders and servers to work.

15.     Defendants have direct or indirect control of the terms and conditions of plaintiff's work and the work of similarly situated bartenders and servers, and also exercise that authority.

16.     During all relevant times, defendants also exercised operational control over the bartenders and servers, including, but not limited to, control over recruiting and training of bartenders and servers, compensation of bartenders and servers, job duties of bartenders and servers, reporting of tips, recruiting and training managers, design and layout of the restaurant, appearance and conduct standards, inventory, and inventory controls.

17.     Defendant 77 Grandville, Inc., is a Michigan corporation with its principal

00141102.WPD                                    3

place of business located in the Western District of Michigan.

18.     Defendants Kris Elliott and Dax Hylarides are the owners and operators of 77 Grandville, Inc.

19.     Defendant 77 Grandville Inc., has substantial control over plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

20.     Upon information and belief, 77 Grandville, Inc., applies or causes to be applied substantially the same employment policies, practices, and procedures to all bartenders and servers, including policies, practices, and procedures relating to payment of minimum wages, tips, and overtime.

21.     Defendant 77 Grandville, Inc., has direct or indirect control of the terms and conditions of plaintiff's work and the work of similarly situated employees.

22.     At all relevant times, 77 Grandville, Inc., maintained control, oversight, and direction over plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, duties, pay rates, deductions, and other practices.

23.     77 Grandville, Inc., is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and M.C.L. §408.414.

24.     At all relevant times, 77 Grandville, Inc., has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

25.     77 Grandville, Inc.'s gross revenue exceeds $500,000 per year.

26.     Kris Elliott and Dax Hylarides are individually liable to the 77 Grandville Inc.'s bartenders and servers under the definitions of "employer" set forth in the FLSA and

00141102.WPD                                    4

M.C.L. §408.414 because they own and operate 77 Grandville, Inc., serve as managers of 77 Grandville, Inc., ultimately control significant aspects of 77 Grandville Inc.'s day-to-day functions, and ultimately control compensation of employees.  29 U.S.C. § 203(d).

27.    At all relevant times, by virtue of their role as owners and operators of 77 Grandville, Inc., Kris Elliott and Dax Hylarides have had financial control over 77 Grandville, Inc.

28.    At all relevant times, by virtue of their role as owners and operators of 77 Grandville, Inc, Kris Elliott and Dax Hylarides have had a role in significant aspects of 77 Grandville, Inc.'s day-to-day operations.

29.    At all relevant times, by virtue of their role as owners and operators of 77 Grandville, Inc., Kris Elliott and Dax Hylarides have had control over 77 Grandville Inc.'s pay policies.

30.    At all relevant times, by virtue of their role as owners and operators of 77 Grandville, Inc., Kris Elliott and Dax Hylarides have had power over personnel and payroll decisions at 77 Grandville, Inc., including but not limited to influence of bartender and server pay.

31.    At all relevant times, by virtue of their role as owners and operators of 77 Grandville, Inc., Kris Elliott and Dax Hylarides have had the power to hire, fire and discipline employees, including bartenders and servers at 77 Grandville, Inc.

32.    At all relevant times, by virtue of their role as owner and operator of 77 Grandville, Inc., Kris Elliott and Dax Hylarides have had the power to stop any illegal pay practices that harmed bartenders and servers at 77 Grandville, Inc.

33.    At all relevant times, by virtue of their role as owners and operators of 77 Grandville, Inc., Kris Elliott and Dax Hylarides have had the power to transfer the assets and liabilities of 77 Grandville, Inc.

34.    At all relevant times, by virtue of their role as owners and operators of 77 Grandville, Inc., Kris Elliott and Dax Hylarides have had the power to declare bankruptcy on behalf of 77 Grandville, Inc.

35.    At all relevant times, by virtue of their role as owners and operators of 77 Grandville, Inc, Kris Elliott and Dax Hylarides have had the power to enter into contracts on behalf of 77 Grandville, Inc.

36.    At all relevant times, by virtue of their role as owners and operators of 77 Grandville, Inc., Kris Elliott and Dax Hylarides have had authority over the overall direction 77 Grandville, Inc., and was ultimately responsible for its operations.

37.    77 Grandville, Inc., functions for the owners' profit.

38.    Kris Elliott and Dax Hylarides have influence over how 77 Grandville, Inc., can run more profitably and efficiently.

## FACTS

### Class-wide Factual Allegations

39.    During all relevant times, 77 Grandville, Inc., operated the Grand Woods Lounge located at 77 Grandville Avenue SW, Grand Rapids, Michigan.

40.    The primary function of the Grand Woods Lounge is to sell alcohol and food to customers.

41.    The Grand Woods Lounge employs bartenders and servers to take customer

orders, prepare drinks, and serve food to customers.

42.     Plaintiff and the similarly situated persons plaintiff seeks to represent are current and former bartenders and servers employed by defendants at the Grand Woods Lounge.

43.     All bartenders and servers employed at the Grand Woods Lounge over the last three years have had essentially the same job–take customer orders, prepare drinks, and serve food to customers.

44.     As part of their compensation, bartenders and servers employed at the Grand Woods Lounge received tips from customers.

45.     All bartenders and servers employed at the Grand Woods Lounge were paid the Michigan minimum wage for tipped employees.

46.     The Michigan minimum wage in 2015 was $8.15 per hour and $3.15 per hour for tipped employees.

47.     The Michigan minimum wage starting January 1, 2016 was $8.50 per hour and $3.23 per hour for tipped employees.

48.     The Michigan minimum wage starting January 1, 2017 was $8.90 per hour and $3.38 per hour for tipped employees.

49.     The Michigan minimum wage starting January 1, 2018 was $9.25 per hour and $3.52 per hour for tipped employees.

50.     The federal minimum wage from 2015 to present was $7.25 per hour and $2.13 for tipped employees.

51.     Defendants claimed a "tip credit" under the FLSA so that they could pay bartenders and servers less than the federal and Michigan minimum wage.

52.     In 2017, defendants required servers to "tip out" three percent (3%) of their total sales to the bartenders, two percent (2%) of food sales to kitchen staff, two percent (2%) of total sales to security staff and bar backs, and two percent (2%) of total sales to hostesses.

53.     In 2018, defendants required servers to "tip out" two percent (2%) total food sales to kitchen staff, two percent (2%) total sales to security staff and bar backs, and two percent (2%) total sales to hostesses.

54.     Kitchen staff do not customarily and regularly receive tips.

55.     Security staff, bar backs, and hostesses do not customarily and regularly receive tips.

56.     The practice and policy of requiring bartenders and servers to "tip out" the kitchen and other staff is applied to all similarly situated employees of defendants.

57.     Kitchen staff do not have any interaction with customers.

58.     Bartenders were required to pool their tips. Managers participated in the tip pool in equal shares to bartenders.

59.     Managers in the restaurant business do not customarily and regularly receive tips.

60.     The practice and policy of requiring bartenders to share tips with managers is applied to all similarly situated employees of defendants.

61.     After their shift, plaintiff and similarly situated bartenders and servers are required to stay and clean the restaurant.

62.     Managers who work closing shifts do not participate in any cleaning duties.

63.     Plaintiff and similarly situated bartenders and servers who were assigned to

closing shifts were only paid until 3:00 a.m.

64.     Plaintiff and similarly situated bartenders and servers were not permitted to report the actual end time of their shift and frequently worked until 4:30 or later.

65.     Plaintiff and similarly situated bartenders and servers did not have the opportunity to earn tips after 2:30 a.m. but were still only paid the minimum tipped wage from 2:30 a.m. to 3:00 a.m. for time spent cleaning the restaurant.

66.     The Grand Woods Lounge does not employ a cleaning staff and relies on the bartenders and servers to clean the restaurant.

67.     Kitchen staff clean the kitchen area and security staff clean the bathrooms. Security staff are paid at least the minimum wage for the hours they spend on cleaning duties.

68.     In effect, defendants required plaintiff and similarly situated bartenders and servers to work without compensation while cleaning the restaurant and bar.

69.     The practice and policy of not paying bartenders and servers for hours spent cleaning after 3:00 a.m. is applied to all similarly situated employees of defendants.

70.     On or about August 28, 2018, plaintiff and similarly situated bartenders and servers were required to work a two hour cleaning shift, outside of their regular shifts as bartenders and servers. They were not paid for the hours they worked during that shift.

71.     Defendants reported an arbitrary amount of tips each shift for plaintiff and similarly situated bartenders and servers.

72.     Defendants did not provide plaintiff and similarly situated employees with an opportunity to correctly report their tipped earnings each shift.

73.     Defendants have a point of sale system with the capability to track employee

tips and hours but do not utilize it for these purposes.

74.     Defendants required plaintiff and other similarly situated bartenders and servers to attend training held at the Grand Woods Lounge outside of business hours without pay.

75.     Plaintiff and similarly situated bartenders and servers were harmed by the actions and inactions of defendants.

## Plaintiff's Individual Factual Allegations

76.     Plaintiff began her employment at Grand Woods Lounge on or about March 8, 2017. She was hired as a server and only paid the Michigan tipped minimum wage.

77.     In 2017 when Hodges was working as a server, defendants required her to "tip out" three percent (3%) of their total sales to the bartenders, two percent (2%) of food sales to kitchen staff, two percent (2%) of total sales to security staff and bar backs, and two percent (2%) of total sales to hostesses.

78.     In 2018 when Hodges was working as a server, defendants required her to "tip out" two percent (2%) total food sales to kitchen staff, two percent (2%) total sales to security staff and bar backs, and two percent (2%) total sales to hostesses.

79.     Kitchen staff in the restaurant industry do not customarily and regularly receive tips.

80.     Security staff, bar backs, and hostesses do not customarily and regularly receive tips.

81.     The practice and policy of requiring bartenders and servers to "tip out" the kitchen and other staff is applied to all similarly situated employees of defendants.

82.     Hodges questioned defendants' management on tipping the kitchen staff.

Management told Hodges that the practice was a nice way to give the kitchen staff money so they could buy cigarettes.

83.    In addition to working as a server, Hodges also worked shifts as a bartender.

84.    Bartenders were required to pool their tips. Managers participated in the tip pool in equal shares to bartenders.

85.    When Hodges worked as a bartender, defendants required her to share her tips with managers.

86.    Managers do not customarily and regularly receive tips.

87.    Defendants did not provide plaintiff with an opportunity to correctly report her tipped earnings each shift.

88.    Defendants reported an arbitrary amount of tips each shift for plaintiff and similarly situated bartenders and servers.

89.    After her shift, Hodges was required to stay and clean the restaurant.

90.    When Hodges was assigned to closing shifts, she was paid until 3:00 a.m.

91.    Hodges was not permitted to report the actual end time of her shift and frequently worked until 4:30 or later.

92.    Hodges did not have the opportunity to earn tips after 2:30 a.m. but was still only paid the minimum tipped wage from 2:30 a.m. to 3:00 a.m. for time spent cleaning the restaurant.

93.    For the pay period of April 23 to May 6, 2018 Hodges worked 82.5 hours. She recorded her hours with an app on her phone. Defendants only paid Hodges for 73.25 hours. Hodges was not paid for all hours worked and not paid overtime for all hours worked over 40 hours per week.

94.    For the pay period of May 7 to May 20, 2018, Hodges worked 88.5 hours. She recorded her hours with an app on her phone. Defendants only paid plaintiff for 81.5 hours. Hodges was not paid for all hours worked and not paid overtime for all hours worked over 40 hours per week.

95.    Hodges worked an average of 4.16 hours per period without compensation.

96.    A copy of the hours Hodges worked from March 2017 until December 1, 2018 is attached as Exhibit 2.

97.    Defendants have a practice and policy of not paying bartenders and servers for hours spent cleaning after 3:00 a.m.

98.    On or about August 28, 2018, Hodges was required to work a two hour cleaning shift. She was not paid for the hours she worked during that shift.

99.    On or about October 16, 2018, Hodges was required to attend two and a half (2.5) hours of training held at the Grand Woods Lounge.

100.    Hodges was not paid for the hours she spent attending the training.

101.    Hodges was required to pay defendants $35 to attend the training.

102.    Hodges was told that if she did not complete the training, she would be terminated.

## **Collective Action Allegations**

103.    Plaintiff brings Count I on behalf of herself and all similarly situated current and former bartenders and servers employed at the Grand Woods Lounge, operated, and controlled by defendants, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

104.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked, overtime for hours worked over forty hours a week, and requiring bartenders and servers to share and provide a portion of their tips to management and non-tipped employees. Plaintiff's claims are essentially the same as those of the FLSA Collective.

105.    Defendants' unlawful conduct is pursuant to a corporate policy or practice.

106.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked.

107.    Defendants are aware or should have been aware that federal law prohibited them from requiring bartenders and servers to share or pay a portion of their tips to managers and non-tipped employees.

108.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

109.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

110.    The FLSA Collective members are readily identifiable and ascertainable.

111.    For the purpose of notice and other purposes related to this action, the FLSA Collective members' names and contact information are readily available from defendants' records.

112.    In recognition of the services plaintiff has rendered and will continue to render

to the FLSA Collective, plaintiff will request payment of a service award upon resolution of this action.

## Class Action Allegations

113.    Plaintiff brings the Counts II, III, IV, and V under Federal Rule of Civil Procedure 23, on behalf of herself and a class of persons consisting of:

> All current and former bartenders and servers employed by defendants at the Grand Woods Lounge in the State of Michigan between the date three years prior to the filing of this action and the date of final judgment in this matter ("Rule 23 Class").

114.    Excluded from Rule 23 Class are defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

115.    The hours assigned and worked, the positions held, amounts of tips taken from employees, and credit card reimbursements for each Rule 23 Class Member are determinable from defendants' records.

116.    For the purpose of notice and other purposes related to this action, the Rule 23 Class Members' names and contact information are readily available from defendants.

117.    Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

118.    The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

00141102.WPD                                    14

119.    There are more than 50 Rule 23 Class members.

120.    Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

121.    Plaintiff and the Rule 23 Class members were subject to the same corporate practices of defendants, as alleged herein, of failing to pay minimum wage for all hours worked, failing to pay overtime for hours worked over forty hours a week, requiring bartenders and servers to share and provide a portion of their tips to management and non-tipped employees, and requiring bartenders and servers to pay a credit card transaction fee that was already paid by the customer.

122.    Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with M.C.L. §408.414.

123.    Plaintiff and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected all Rule 23 Class members similarly, and defendants benefitted from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

124.    Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

125.    By seeking to represent the interests of the Rule 23 Class members, plaintiff is exercising and intends to exercise her right to engage in concerted activity for the mutual aid or benefit of herself and her co-workers.

126.    Plaintiff is able to fairly and adequately protect the interests of the Rule 23

Class and has no interests antagonistic to the Rule 23 Class.

127.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

128.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

129.    Upon information and belief, defendants and other employers throughout the state violate M.C.L. §408.414. Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

130.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

131.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

a.    Whether defendants paid plaintiff and the Rule 23 Class members at the

proper minimum wage rate for all hours worked;

b. Whether defendants paid plaintiff and the Rule 23 Class members for all hours worked;

c. Whether defendants paid plaintiff and the Rule 23 Class members at the proper overtime rate for all hours worked over 40 hours each week;

d. Whether plaintiff and the Rule 23 Class members were subject to a common tip pool policy that required sharing tips with managers and other non-tipped employees;

e. Whether plaintiff and the Rule 23 Class were subject to a policy that required them to work additional hours after their shift without compensation;

f. Whether plaintiff and the Rule 23 Class were subject to a policy that denied employees wages for the hours spent in mandatory training;

g. The nature and extent of class-wide injury and the measure of damages for those injuries.

132. In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

## CAUSES OF ACTION

### COUNT I
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

133. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

134. Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

135. Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

136.    Defendants claimed a tip credit under the FLSA so that they could pay employees less than the federal and state minimum wage.

137.    Defendants required and continue to require plaintiff and the FLSA Collective to remit tips to managers and other non-tipped employees.

138.    Defendants required and continue to require plaintiff and the FLSA Collective to work additional hours to clean the restaurant beyond their shifts serving customers. Plaintiff and the FLSA Collective were not paid, or paid at a rate below, minimum wage for these hours.

139.    Defendants required and continue to require plaintiff and the FLSA Collective to attend training sessions for the benefit of defendants without pay.

140.    By the acts and conduct described above, defendants willfully violated the provisions of the FLSA and disregarded the rights of plaintiff and the FLSA Collective.

141.    Plaintiff and the FLSA Collective have been damaged by defendants' willful failure to pay minimum wage as required by law.

142.    As a result of defendants' willful violations, plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

### COUNT II
### Failure to Pay Overtime Wages-Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

143.    Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

144.    Plaintiff and the FLSA Collective worked more than forty hours in one or more workweeks.

00141102.WPD                                18

145.    Because defendants did not accurately record the plaintiff and the FLSA Collective's hours worked, defendants did not pay plaintiff and the FLSA Collective at least one and a half times their normal hourly rate for time worked in excess of forty hours per workweek.

146.    By not paying plaintiff and the FLSA Collective proper overtime wages for time worked in excess of forty hours in a workweek, defendants have willfully violated the FLSA.

147.    As a result of defendants willful violations, plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

### COUNT III
### Failure to Pay Minimum Wage - M.C.L. §408.414
### (On Behalf of Plaintiff and Rule 23 Class)

148.    Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

149.    Defendants claimed a tip credit so that they could pay bartenders and servers less than the minimum wage.

150.    Defendants required plaintiff and the Rule 23 Class to share tips with managers and other non-tipped employees.

151.    Defendants required plaintiff and the Rule 23 Class to work hours cleaning the restaurant and in training without compensation.

152.    The Michigan Workforce Opportunity Wage Act, M.C.L. §408.411, et seq. requires that employers be paid not less than minimum wage as determined by an inflation

index (currently $9.25/hour) for all hours worked.

153.    Because defendants required plaintiff and the Rule 23 Class to share tips with managers and other non-tipped employees, defendants were not entitled to a tip credit and failed to pay plaintiff and Rule 23 Class minimum wage.

154.    By not paying plaintiff and the Rule 23 Class at least minimum wage for each hour worked, defendants have violated M.C.L. §408.414.

155.    By not paying plaintiff and the Rule 23 Class at least one and one half times minimum wage for each hour worked over forty (40) hours per week, defendants have violated M.C.L. §408.414a(1).

156.    As a result of defendants' violations, plaintiff and Rule 23 Class are entitled to damages, including, but not limited to unpaid wages, unpaid overtime, liquidated damages, costs, and attorney fees pursuant to M.C.L. §408.419.

WHEREFORE, Plaintiff Shanell Hodges, the FLSA Collective and the Rule 23 Class seek all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of plaintiff and their counsel to represent the collective action members;

B.    Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations;

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

00141102.WPD

20

D.      Designation of plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel;

E.      A declaratory judgment that the practices complained of herein are unlawful under the Workplace Opportunity Wage Act, M.C.L. §408.411, et seq;

F.      An award of damages under M.C.L. §408.419, based on Defendants' failure to pay minimum wages, liquidated damages, plus attorneys' fees and costs;

G.      An award of prejudgment and post-judgment interest;

H.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees;

I.       Leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court;

J.       An injunction prohibiting any further acts of wrongdoing and failure to pay employee benefits; and

K.      Such other legal and equitable relief as the Court deems appropriate.


Respectfully submitted.

BOS & GLAZIER, P.L.C.
Attorneys for Plaintiff and Putative Class

Date: February 4, 2019          By:  _/s/ Bradley K. Glazier_____
                                     Bradley K. Glazier (P35523)
                                     Robert M. Howard (P80740)

                                BUSINESS ADDRESS:
                                     990 Monroe Avenue, N.W.
                                     Grand Rapids, MI  49503
                                     (616) 458-6814

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues herein triable to a jury.

BOS & GLAZIER, P.L.C.
Attorneys for Plaintiff and putative class

Date: February 4, 2019          By:   */s/ Bradley K. Glazier*
Bradley K. Glazier (P35523)
Robert M. Howard (P80740)

BUSINESS ADDRESS:
990 Monroe Avenue, N.W.
Grand Rapids, MI  49503
(616) 458-6814