UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

SHANELL HODGES, on behalf of herself
and those similarly situated,

      Plaintiff,

                                    Case No. 1:19-cv-00081

v.

                                    Hon. Paul L. Maloney
77 GRANDVILLE, INC., a Michigan profit      Magistrate Judge Ray Kent
corporation, and KRIS ELLIOTT and
DAX HYLARIDES, individuals,

      Defendants.

_____

Bradley K. Glazier (P35523)
Robert M. Howard (P80740)
Bos & Glazier, P.L.C.
990 Monroe Avenue, N.W.
Grand Rapids, MI  49503
616.458.6814
bglazier@bosglazier.com

Attorneys for Plaintiff

Jeffrey G. Muth (P65041)
Matthew M. O'Rourke (P79019)
Miller Johnson
45 Ottawa Avenue, SW, Suite 1100
Grand Rapids, MI  49503
616.831.1700
muthj@millerjohnson.com
orourkem@millerjohnson.com

John W. Inhulsen
Inhulsen Law PLC
250 Monroe Ave. NW, Suite 400
Grand Rapids, MI  49503
616.747.0000
john@inhulsen.com
616.747.0000
john@inhulsen.com

Attorneys for Defendants

_____

## DEFENDANTS' ANSWER TO CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND, WITH AFFIRMATIVE AND OTHER DEFENSES

NOW COME Defendants 77 Grandville, Inc., Kris Elliott, and Dax Hylarides, by and through their attorneys, and answer Plaintiff's Class and Collective Action Complaint and Jury Demand as follows:

**INTRODUCTION**

1.      Shanell Hodges, on behalf of herself and all similarly-situated individuals, brings this action against defendants 77 Grandville, Inc., Kris Elliott, and Dax Hylarides. Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages and overtime as required by the Fair Labor Standards Act ("FLSA") and M.C.L. §408.414.

**ANSWER:**      **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action.**

2.      Defendants operate the Grand Woods Lounge – a restaurant and bar in Grand Rapids, Michigan.

**ANSWER:**      **Admitted that Defendant Kris Elliott owns 77 Grandville, Inc. and that Dax Hylarides owns a minority share of 77 Grandville, Inc. Further admitted that 77 Grandville, Inc. operates under the name Grand Woods Lounge. Further admitted that Grand Woods Lounge is a restaurant in Grand Rapids, Michigan. All other allegations are denied as untrue.**

3.      Defendants 77 Grandville Inc., Elliott, and Hylarides (collectively "Grand Woods Lounge") have repeatedly and willfully violated the Fair Labor Standards Act and the Workforce Opportunity Wage Act, M.C.L. §408.414, by failing to adequately pay employees for all hours worked, by requiring workers to share tips with managers and kitchen staff, and failing to pay overtime for hours worked in excess of forty hours per week.

**ANSWER:**      **Denied as untrue.**

4.     All bartenders and servers at the Defendants' business, including Plaintiff, have been subject to the same employment policies and practices, including policies and practices with respect to wages, tips, and overtime.

**ANSWER:**     **Denied as untrue.**

5.     Plaintiff brings this action on behalf of herself and similarly situated current and former bartenders and servers who elect to opt in pursuant to FLSA, 29 U.S.C. §216(b) to remedy violations of the FLSA wages and hour provisions by Defendants.

**ANSWER:**     **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action.**

6.     Plaintiff also brings this action on behalf of herself and similarly situated current and former bartenders and servers in Michigan, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of M.C.L. §408.414.

**ANSWER:**     **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action.**

### JURISDICTION AND VENUE

7.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

**ANSWER:**     **Denied that Plaintiff has a cause of action against Defendants, but Defendants do not deny that jurisdiction is proper with this Court.**

8.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over plaintiff's Michigan law claims.

**ANSWER:**     **Denied that Plaintiff has a cause of action against Defendants, but Defendants do not deny that jurisdiction is proper with this Court.**

9.     Venue in this Court is proper under 28 U.S.C. §1391(b) because the parties reside in this district and a substantial part of the events giving rise to the claims raised occurred in this district.

**ANSWER:**    Denied that Plaintiff has a cause of action against Defendants, but Defendants do not deny that venue is proper with this Court.

<u>PARTIES</u>

10.    Plaintiff Shanell Hodges resides in Grand Rapids, Michigan, and worked within the boundaries of the Western District of Michigan.

**ANSWER:**    Admitted that Plaintiff currently works within the boundaries of the Western District of Michigan at the Grand Woods Lounge.  Defendants lack information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 10 and therefore deny.

11.    Plaintiff was an "employee" of all of the Defendants as defined in the FLSA, the M.C.L. §408.414.

**ANSWER:**    Paragraph 11 contains legal assertions to which no response is required.  All other allegations are denied as untrue.

12.    Plaintiff has given written consent to join this action. (Exhibit 1).

**ANSWER:**    Exhibit 1 speaks for itself.  All other allegations are denied as untrue.

13.    Defendants have employed Plaintiff and similarly situated bartenders and servers.

**ANSWER:**    Defendants admit that Defendant 77 Grandville employed Plaintiff as a bartender and server.  All other allegations are denied as untrue.

14.    Defendants suffer or permit Plaintiff and other bartenders and servers to work.

**ANSWER:**    Paragraph 14 contains legal assertions to which no response is required.  All other allegations are denied as untrue.

15.    Defendants have direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated bartenders and servers, and also exercise that authority.

**ANSWER:**    Admitted that 77 Grandville has direct or indirect control over the terms and conditions of its employees' work.  All other allegations are denied as untrue.

16.    During all relevant times, Defendants also exercised operational control over the bartenders and servers, including, but not limited to, control over recruiting and training of bartenders and servers, compensation of bartenders and servers, job duties of bartenders and

servers, reporting of tips, recruiting and training managers, design and layout of the restaurant, appearance and conduct standards, inventory, and inventory controls.

**ANSWER:**     **Denied as untrue.**

17.     Defendant 77 Grandville, Inc., is a Michigan corporation with its principal place of business located in the Western District of Michigan.

**ANSWER:**     **Admitted.**

18.     Defendants Kris Elliott and Dax Hylarides are the owners and operators of 77 Grandville, Inc.

**ANSWER:**     **Denied as untrue.**

19.     Defendant 77 Grandville, Inc., has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

**ANSWER:**     **Denied as untrue.**

20.     Upon information and belief, 77 Grandville, Inc., applies or causes to be applied substantially the same employment policies practices, and procedures to all bartenders and servers, including policies, practices, and procedures relating to payment of minimum wages, tips, and overtime.

**ANSWER:**     **Denied as untrue.**

21.     Defendant 77 Grandville, Inc., has direct or indirect control of the terms and conditions of Plaintiffs work and the work of similarly situated employees.

**ANSWER:**     **Admitted that 77 Grandville has direct or indirect control over the terms and conditions of its employees' work.  All other allegations are denied as untrue.**

22.     At all relevant times, 77 Grandville, Inc., maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, duties, pay rates, deductions, and other practices.

**ANSWER:**     **Admitted that 77 Grandville has direct or indirect control over the terms and conditions of its employees' work.  All other allegations are denied as untrue.**

23.     77 Grandville, Inc., is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA and M.C.L. §408.414.

**ANSWER:**     **Admitted that 77 Grandville, Inc. is Plaintiff's employer.  All other allegations are denied as untrue.**

24.     At all relevant times, 77 Grandville, Inc., has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

**ANSWER:**     **Admitted that 77 Grandville is engaged in commerce.  All other allegations are denied as untrue.**

25.     77 Grandville, Inc.'s gross revenue exceeds $500,000 per year.

**ANSWER:**     **Admitted.**

26.     Kris Elliott and Dax Hylarides are individually liable to the 77 Grandville, Inc.'s bartenders and servers under the definitions of "employer" set forth in the FLSA and M.C.L. §408.414 because they own and operate 77 Grandville, Inc., serve as manager of 77 Grandville, Inc., ultimately control significant aspects of 77 Grandville, Inc.'s day-to-day functions, and ultimately control compensation of employees.  29 U.S.C. §203(d).

**ANSWER:**     **Denied that Plaintiff has a cause of action against Defendants.  All other allegations are denied as untrue.**

27.     At all relevant times, by virtue of their role as owners and operators of 77 Grandville, Inc., Kris Elliott and Dax Hylarides have had financial control over 77 Grandville, Inc.

**ANSWER:**     **Denied as untrue.**

28.     At all relevant times, by virtue of their role as owners and operators of 77 Grandville, Inc, Kris Elliott and Dax Hylarides have had a role in significant aspects of 77 Grandville, Inc.'s day-to-day operations.

**ANSWER:**     **Denied as untrue.**

29.     At all relevant times, by virtue of their role as owners and operators of 77 Grandville, Inc., Kris Elliott and Dax Hylarides have had control over 77 Grandville Inc.'s pay policies.

**ANSWER:**     **Denied as untrue.**

30.     At all relevant times, by virtue of their role as owners and operators of 77 Grandville, Inc., Kris Elliott and Dax Hylarides have had power over personnel and payroll decisions at 77 Grandville, Inc., including but not limited to influence of bartender and server pay.

**ANSWER:**     **Denied as untrue.**

31.     At all relevant times, by virtue of their role as owners and operators of 77 Grandville, Inc., Kris Elliott and Dax Hylarides have had the power to hire, fire and discipline employees, including bartenders and servers at 77 Grandville, Inc.

**ANSWER:**     **Admitted that Elliott and Hylarides have the power to hire, fire, and discipline employees at Grand Woods Lounge.  All other allegations are denied as untrue.**

32.     At all relevant times, by virtue of their role as owner and operator of 77 Grandville, Inc., Kris Elliott and Dax Hylarides have had the power to stop any illegal pay practices that harmed bartenders and servers at 77 Grandville, Inc.

**ANSWER:**     **Denied that Defendants have engaged in any illegal pay practices that harmed bartenders and servers at 77 Grandville, Inc. All other allegations are denied as untrue.**

33.     At all relevant times, by virtue of their role as owners and operators of 77 Grandville, Inc., Kris Elliott and Dax Hylarides have had the power to transfer the assets and liabilities of 77 Grandville, Inc.

<u>**ANSWER**</u>:     **Denied as untrue.**

34.     At all relevant times, by virtue of their role as owners and operators of 77 Grandville, Inc., Kris Elliott and Dax Hylarides have had the power to declare bankruptcy on behalf of 77 Grandville, Inc.

<u>**ANSWER**</u>:     **Denied as untrue.**

35.     At all relevant times, by virtue of their role as owners and operators of 77 Grandville, Inc, Kris Elliott and Dax Hylarides have had the power to enter into contracts on behalf of 77 Grandville, Inc.

<u>**ANSWER**</u>:     **Denied as untrue.**

36.     At all relevant times, by virtue of their role as owners and operators of 77 Grandville, Inc., Kris Elliott and Dax Hylarides have had authority over the overall direction 77 Grandville, Inc., and was ultimately responsible for its operations.

<u>**ANSWER**</u>:     **Denied as untrue.**

37.     77 Grandville, Inc., functions for the owners' profit.

<u>**ANSWER**</u>:     **Admitted that 77 Grandville is a for-profit corporation.  All other allegations are denied as untrue.**

38.     Kris Elliott and Dax Hylarides have influence over how 77 Grandville, Inc., can run more profitably and efficiently.

<u>**ANSWER**</u>:     **Denied as untrue.**

## FACTS

### Class-Wide Factual Allegations

39. During all relevant times, 77 Grandville, Inc., operated the Grand Woods Lounge located at 77 Grandville Avenue SW, Grand Rapids, Michigan.

**ANSWER:** **Admitted.**

40. The primary function of the Grand Woods Lounge is to sell alcohol and food to customers.

**ANSWER:** **Admitted that Grand Woods Lounge sells alcohol and food to customers. All other allegations are denied as untrue**

41. The Grand Woods Lounge employs bartenders and servers to take customer orders, prepare drinks, and serve food to customers.

**ANSWER:** **Admitted that Grand Woods Lounge employs bartenders and servers, and that bartenders and servers take customer orders, prepare drinks, and serve food to customers. All other allegations are denied as untrue.**

42. Plaintiff and the similarly situated persons plaintiff seeks to represent are current and former bartenders and servers employed by defendants at the Grand Woods Lounge.

**ANSWER:** **Paragraph 42 contains a description of Plaintiff's proposed class or collective action, as to which no response is required. To the extent a response is required, the allegations in Paragraph 42 are denied as untrue.**

43. All bartenders and servers employed at the Grand Woods Lounge over the last three years have had essentially the same job—take customer orders, prepare drinks, and serve food to customers.

**ANSWER:** **Admitted that bartenders and servers employed by the Grand Woods Lounge take customer orders, prepare drinks, and serve food to customers. All other allegations are denied as untrue.**

44. As part of their compensation, bartenders and servers employed at the Grand Woods Lounge received tips from customers.

**ANSWER:** **Admitted.**

45.    All bartenders and servers employed at the Grand Woods Lounge were paid the Michigan minimum wage for tipped employees.

**ANSWER:** **Admitted.**

46.    The Michigan minimum wage in 2015 was $8.15 per hour and $3.15 per hour for tipped employees.

**ANSWER:** **Denied as untrue.**

47.    The Michigan minimum wage starting January 1, 2016 was $8.50 per hour and $3.23 per hour for tipped employees.

**ANSWER:** **Admitted.**

48.    The Michigan minimum wage starting January 1, 2017 was $8.90 per hour and $3.38 per hour for tipped employees.

**ANSWER:** **Admitted.**

49.    The Michigan minimum wage starting January 1, 2018 was $9.25 per hour and $3.52 per hour for tipped employees.

**ANSWER:** **Admitted.**

50.    The federal minimum wage from 2015 to present was $7.25 per hour and $2.13 for tipped employees.

**ANSWER:** **Admitted.**

51.    Defendants claimed a "tip credit" under the FLSA so that they could pay bartenders and servers less than the federal and Michigan minimum wage.

**ANSWER:** **Admitted that 77 Grandville claimed the statutory "tip credit" for Plaintiff. All other allegations are denied as untrue.**

52.     In 2017, defendants required servers to "tip out" three percent (3%) of their total sales to the bartenders, two percent (2%) of food sales to kitchen staff, two percent (2%) of total sales to security staff and bar backs, and two percent (2%) of total sales to hostesses.

**ANSWER:**     **Denied as untrue.**

53.     In 2018, defendants required servers to "tip out" two percent (2%) total food sales to kitchen staff, two percent (2%) total sales to security staff and bar backs, and two percent (2%) total sales to hostesses.

**ANSWER:**     **Denied as untrue.**

54.     Kitchen staff do not customarily and regularly receive tips.

**ANSWER:**     **Defendants lack information sufficient to form a belief as to the truth of the allegations in Paragraph 54 and therefore deny as untrue.**

55.     Security staff, bar backs, and hostesses do not customarily and regularly receive tips.

**ANSWER:**     **Defendants lack information sufficient to form a belief as to the truth of the allegations in Paragraph 55 and therefore deny as untrue.**

56.     The practice and policy of requiring bartenders and servers to "tip out" the kitchen and other staff is applied to all similarly situated employees of defendants.

**ANSWER:**     **Denied as untrue.**

57.     Kitchen staff do not have any interaction with customers.

**ANSWER:**     **Defendants lack information sufficient to form a belief as to the truth of the allegations in Paragraph 57 and therefore deny as untrue.**

58.     Bartenders were required to pool their tips. Managers participated in the tip pool in equal shares to bartenders.

**ANSWER:**     **Denied as untrue.**

59.     Managers in the restaurant business do not customarily and regularly receive tips.

**ANSWER:** **Defendants lack information sufficient to form a belief as to the truth of the allegations in Paragraph 59 and therefore deny as untrue.**

60.     The practice and policy of requiring bartenders to share tips with managers is applied to all similarly situated employees of defendants.

**ANSWER:** **Denied as untrue.**

61.     After their shift, plaintiff and similarly situated bartenders and servers are required to stay and clean the restaurant.

**ANSWER:** **Admitted that, at times, 77 Grandville requires some bartenders and servers to clean the Grand Woods Lounge. All other allegations are denied as untrue.**

62.     Managers who work closing shifts do not participate in any cleaning duties.

**ANSWER:** **Denied as untrue.**

63.     Plaintiff and similarly situated bartenders and servers who were assigned to closing shifts were only paid until 3:00 a.m.

**ANSWER:** **Denied as untrue.**

64.     Plaintiff and similarly situated bartenders and servers were not permitted to report the actual end time of their shift and frequently worked until 4:30 or later.

**ANSWER:** **Denied as untrue.**

65.     Plaintiff and similarly situated bartenders and servers did not have the opportunity to earn tips after 2:30 a.m. but were still only paid the minimum tipped wage from 2:30 a.m. to 3:00 a.m. for time spent cleaning the restaurant.

**ANSWER:** **Admitted that customers must leave the Grand Woods Lounge at or around 2:30 a.m. All other allegations are denied as untrue.**

66.     The Grand Woods Lounge does not employ a cleaning staff and relies on the bartenders and servers to clean the restaurant.

**ANSWER:** **Denied as untrue.**

67.     Kitchen staff clean the kitchen area and security staff clean the bathrooms. Security staff are paid at least the minimum wage for the hours they spend on cleaning duties.

<u>**ANSWER**</u>**:**     **Denied as untrue.**

68.     In effect, defendants required plaintiff and similarly situated bartenders and servers to work without compensation while cleaning the restaurant and bar.

<u>**ANSWER**</u>**:**     **Denied as untrue.**

69.     The practice and policy of not paying bartenders and servers for hours spent cleaning after 3:00 a.m. is applied to all similarly situated employees of defendants.

<u>**ANSWER**</u>**:**     **Denied as untrue.**

70.     On or about August 28, 2018, plaintiff and similarly situated bartenders and servers were required to work a two hour cleaning shift, outside of their regular shifts as bartenders and servers. They were not paid for the hours they worked during that shift.

<u>**ANSWER**</u>**:**     **Denied as untrue.**

71.     Defendants reported an arbitrary amount of tips each shift for plaintiff and similarly situated bartenders and servers.

<u>**ANSWER**</u>**:**     **Denied as untrue.**

72.     Defendants did not provide plaintiff and similarly situated employees with an opportunity to correctly report their tipped earnings each shift.

<u>**ANSWER**</u>**:**     **Denied as untrue.**

73.     Defendants have a point of sale system with the capability to track employee tips and hours but do not utilize it for these purposes.

<u>**ANSWER**</u>**:**     **Denied as untrue.**

74.     Defendants required plaintiff and other similarly situated bartenders and servers to attend training held at the Grand Woods Lounge outside of business hours without pay.

**<u>Answer</u>:** **Admitted that Plaintiff was not paid for the training because she did not sign the time log, as required. Grand Woods Lounge nevertheless attempted to pay Plaintiff for the training but she refused to accept the payment. All other allegations are denied as untrue.**

75. Plaintiff and similarly situated bartenders and servers were harmed by the actions and inactions of defendants.

**<u>Answer</u>:** **Denied as untrue.**

**<u>PLAINTIFF'S INDIVIDUAL FACTUAL ALLEGATIONS</u>**

76. Plaintiff began her employment at Grand Woods Lounge on or about March 8, 2017. She was hired as a server and only paid the Michigan tipped minimum wage.

**<u>Answer</u>:** **Admitted that Plaintiff began working at Grand Woods Lounge on March 4, 2017 as a server. The remaining allegations are denied as untrue.**

77. In 2017 when Hodges was working as a server, defendants required her to "tip out" three percent (3%) of their total sales to the bartenders, two percent (2%) of food sales to kitchen staff, two percent (2%) of total sales to security staff and bar backs, and two percent (2%) of total sales to hostesses.

**<u>Answer</u>:** **Denied as untrue.**

78. In 2018 when Hodges was working as a server, defendants required her to "tip out" two percent (2%) total food sales to kitchen staff, two percent (2%) total sales to security staff and bar backs, and two percent (2%) total sales to hostesses.

**<u>Answer</u>:** **Denied as untrue.**

79. Kitchen staff in the restaurant industry do not customarily and regularly receive tips.

**<u>Answer</u>:** **Defendants lack information sufficient to form a belief as to the truth of the allegations in Paragraph 79 and therefore deny as untrue.**

80.     Security staff, bar backs, and hostesses do not customarily and regularly receive tips.

**ANSWER:**     **Defendants lack information sufficient to form a belief as to the truth of the allegations in Paragraph 80 and therefore deny as untrue.**

81.     The practice and policy of requiring bartenders and servers to "tip out" the kitchen and other staff is applied to all similarly situated employees of defendants.

**ANSWER:**     **Denied as untrue.**

82.     Hodges questioned defendants' management on tipping the kitchen staff. Management told Hodges that the practice as a nice way to give the kitchen staff money so they could buy cigarettes.

**ANSWER:**     **Denied as untrue.**

83.     In addition to working as a server, Hodges also worked shifts as a bartender.

**ANSWER:**     **Admitted.**

84.     Bartenders were required to pool their tips. Managers participated in the tip pool in equal shares to bartenders.

**ANSWER:**     **Denied as untrue.**

85.     When Hodges worked as a bartender, defendants required her to share her tips with managers.

**ANSWER:**     **Denied as untrue.**

86.     Managers do not customarily and regularly receive tips.

**ANSWER:**     **Defendants lack information sufficient to form a belief as to the truth of the allegations in Paragraph 86 and therefore deny as untrue.**

87.     Defendants did not provide plaintiff with an opportunity to correctly report her tipped earnings each shift.

**ANSWER:**     **Denied as untrue.**

88.     Defendants reported an arbitrary amount of tips each shift for plaintiff and similarly situated bartenders and servers.

**ANSWER:**     **Denied as untrue.**

89.     After her shift, Hodges was required to stay and clean the restaurant.

**ANSWER:**     **Admitted that Plaintiff was required to clean the restaurant at times.  The remaining allegations are denied as untrue.**

90.     When Hodges was assigned to closing shifts, she was paid until 3:00 a.m.

**ANSWER:**     **Denied as untrue.**

91.     Hodges was not permitted to report the actual end time of her shift and frequently worked until 4:30 or later.

**ANSWER:**     **Denied as untrue.**

92.     Hodges did not have the opportunity to earn tips after 2:30 a.m. but was still only paid the minimum tipped wage from 2:30 a.m. to 3:00 a.m. for time spent cleaning the restaurant.

**ANSWER:**     **Admitted that customers must leave the Grand Woods Lounge at or around 2:30 a.m.  All other allegations are denied as untrue.**

93.     For the pay period of April 23 to May 6, 2018 Hodges worked 82.5 hours. She recorded her hours with an app on her phone. Defendants only paid Hodges for 73.25 hours. Hodges was not paid for all hours worked and not paid overtime for all hours worked over 40 hours per week.

**ANSWER:**     **Denied as untrue.**

94.     For the pay period of May 7 to May 20, 2018, Hodges worked 88.5 hours. She recorded her hours with an app on her phone. Defendants only paid plaintiff for 81.5 hours. Hodges was not paid for all hours worked and not paid overtime for all hours worked over 40 hours per week.

**ANSWER:**     **Denied as untrue.**

95.     Hodges worked an average of 4.16 hours per period without compensation.

**ANSWER:**     **Denied as untrue.**

96.     A copy of the hours Hodges worked from March 2017 until December 1, 2018 is attached as Exhibit 2.

**ANSWER:**     **Exhibit 2 speaks for itself.  All other allegations are denied as untrue.**

97.     Defendants have a practice and policy of not paying bartenders and servers for hours spent cleaning after 3:00 a.m.

**ANSWER:**     **Denied as untrue.**

98.     On or about August 28, 2018, Hodges was required to work a two hour cleaning shift. She was not paid for the hours she worked during that shift.

**ANSWER:**     **Denied as untrue.**

99.     On or about October 16, 2018, Hodges was required to attend two and a half (2.5) hours of training held at the Grand Woods Lounge.

**ANSWER:**     **Admitted.**

100.    Hodges was not paid for the hours she spent attending the training.

**ANSWER:**     **Admitted that Plaintiff was not paid for the training because she did not sign the time log, as required.  Grand Woods Lounge attempted to pay Plaintiff for the training but she refused to accept the payment.  All other allegations are denied as untrue.**

101.    Hodges was required to pay defendants $35 to attend the training.

**ANSWER:**     **Denied as untrue.**

102.    Hodges was told that if she did not complete the training, she would be terminated.

**ANSWER:**     **Admitted.  In further answers, Defendants required Plaintiff to attend TAM (Techniques of Alcohol Management) Training, which was required for her to continue to serve alcohol to customers.  Plaintiff "owns" the certification she earned at TAM training; that is, she is not limited to using it in her work for 77 Grandville.**

103.    Plaintiff brings Count I on behalf of herself and all similarly situated current and former bartenders and servers employed at the Grand Woods Lounge, operated, and controlled by defendants, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

**ANSWER:**       **Paragraph 103 contains a description of Plaintiff's proposed class or collective action, as to which no response is required.  To the extent a response is required, the allegations in Paragraph 103 are denied as untrue.**

104.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked, overtime for hours worked over forty hours a week, and requiring bartenders and servers to share and provide a portion of their tips to management and non-tipped employees. Plaintiffs claims are essentially the same as those of the FLSA Collective.

**ANSWER:**       **Denied as untrue.**

105.    Defendants' unlawful conduct is pursuant to a corporate policy or practice.

**ANSWER:**       **Denied as untrue.**

106.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked.

**ANSWER:**       **Admitted that Defendants are aware of state and federal minimum wage laws. All other allegations are denied as untrue.**

107.    Defendants are aware or should have been aware that federal law prohibited them from requiring bartenders and servers to share or pay a portion of their tips to managers and non-tipped employees.

**ANSWER:**     **Denied as untrue.**

108.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

**ANSWER:**     **Denied as untrue.**

109.     The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

**ANSWER:**     **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action.   All other allegations are denied as untrue.**

110.     The FLSA Collective members are readily identifiable and ascertainable.

**ANSWER:**     **Denied as untrue.**

111.     For the purpose of notice and other purposes related to this action, the FLSA Collective members' names and contact information are readily available from defendants' records.

**ANSWER:**     **Denied as untrue.**

112.     In recognition of the services plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

**ANSWER:**     **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action.**

### CLASS ACTION ALLEGATIONS

113.     Plaintiff brings the Counts II, Ill, IV, and V under Federal Rule of Civil Procedure 23, on behalf of herself and a class of persons consisting of:

> All current and former bartenders and servers employed by defendants at the Grand Woods Lounge in the State of Michigan between the date three years prior to the filing of this action and the date of final judgment in this matter ("Rule 23 Class").

**ANSWER:**     **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action.  To the extent that Paragraph 113 contains a description of Plaintiff's proposed class or collective**

**action, no response is required. To the extent a response is required, the allegations in Paragraph 113 are denied as untrue.**

114.    Excluded from Rule 23 Class are defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

<u>ANSWER</u>:    **Paragraph 114 contains a description of those individuals excluded from Plaintiff's proposed "Rule 23 Class," as to which no response is required. To the extent a response is required, Defendants deny that Plaintiff's claims are suitable for treatment on a class action basis and denies that Defendants acted unlawfully toward Plaintiff or any alleged member of the proposed Rule 23 class.**

115.    The hours assigned and worked, the positions held, amounts of tips taken from employees, and credit card reimbursements for each Rule 23 Class Member are determinable from defendants' records.

<u>ANSWER</u>:    **Denied that Plaintiff's claims are suitable for class or collective action. Defendants lack information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 115 and therefore deny as untrue.**

116.    For the purpose of notice and other purposes related to this action, the Rule 23 Class Members' names and contact information are readily available from defendants.

<u>ANSWER</u>:    **Denied that Plaintiff's claims are suitable for class or collective action. Defendants lack information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 116 and therefore deny as untrue.**

117.    Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

<u>ANSWER</u>:    **Denied as untrue.**

118.    The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

**ANSWER:** **Denied that Plaintiff's claims are suitable for class or collective action. Defendants lack information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 118 and therefore deny as untrue**

119.    There are more than 50 Rule 23 Class members.

**ANSWER:** **Denied as untrue.**

120.    Plaintiffs claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

**ANSWER:** **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action. The remaining allegations are denied as untrue.**

121.    Plaintiff and the Rule 23 Class members were subject to the same corporate practices of defendants, as alleged herein, of failing to pay minimum wage for all hours worked, failing to pay overtime for hours worked over forty hours a week, requiring bartenders and servers to share and provide a portion of their tips to management and non-tipped employees, and requiring bartenders and servers to pay a credit card transaction fee that was already paid by the customer.

**ANSWER:** **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action. The remaining allegations are denied as untrue.**

122.    Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with M.C.L. §408.414.

**ANSWER:** **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action. The remaining allegations are denied as untrue.**

123.    Plaintiff and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected all Rule 23 Class

members similarly, and defendants benefitted from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

**ANSWER:** **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action. The remaining allegations are denied as untrue.**

124. Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

**ANSWER:** **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action. The remaining allegations are denied as untrue.**

125. By seeking to represent the interests of the Rule 23 Class members, plaintiff is exercising and intends to exercise her right to engage in concerted activity for the mutual aid or benefit of herself and her co-workers.

**ANSWER:** **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action. The remaining allegations are denied as untrue.**

126. Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

**ANSWER:** **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action. Defendants lack information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 126 and therefore deny as untrue.**

127. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

**ANSWER:** **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action. Defendants lack information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 127 and therefore deny as untrue.**

128. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf

of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

**A**NSWER**:**      **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action. The remaining allegations are denied as untrue.**

129. Upon information and belief, defendants and other employers throughout the state violate M.C.L. §408.414. Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

**A**NSWER**:**      **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action. Defendants lack information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 129 and therefore deny as untrue.**

130. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

**A**NSWER**:**      **Denied as untrue.**

131. Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

     a.      Whether defendants paid plaintiff and the Rule 23 Class members at the proper minimum wage rate for all hours worked;

**ANSWER:**   **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action. The remaining allegations are denied as untrue.**

   b.   Whether Defendants paid Plaintiff and the Rule 23 Class members for all hours worked;

**ANSWER:**   **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action. The remaining allegations are denied as untrue.**

   c.   Whether Defendants paid Plaintiff and the Rule 23 Class members at the proper overtime rate for all hours worked over 40 hours each week;

**ANSWER:**   **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action. The remaining allegations are denied as untrue.**

   d.   Whether Plaintiff and the Rule 23 Class members were subject to a common tip pool policy that required sharing tips with managers and other non-tipped employees;

**ANSWER:**   **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action. The remaining allegations are denied as untrue.**

   e.   Whether Plaintiff and the Rule 23 Class were subject to a policy that required them to work additional hours after their shift without compensation;

**ANSWER:**   **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action. The remaining allegations are denied as untrue.**

   f.   Whether Plaintiff and the Rule 23 Class were subject to a policy that denied employees wages for the hours spent in mandatory training;

**ANSWER:**   **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action. The remaining allegations are denied as untrue.**

   g.   The nature and extent of class-wide injury and the measure of damages for those injuries.

**Answer:**   **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action. The remaining allegations are denied as untrue.**

132.    In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

**ANSWER:**    **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action.**

**CAUSES OF ACTION**
**COUNT I**
**Failure to Pay Minimum Wages – Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

133.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

**ANSWER:**    **Defendants incorporate by reference their answers to the preceding allegations as if fully reinstated herein.**

134.    Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

**ANSWER:**    **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action. The remaining allegations are denied as untrue.**

135.    Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

**ANSWER:**    **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action. Admitted that Defendants paid Plaintiff consistently with state and federal law. The remaining allegations are denied as untrue.**

136.    Defendants claimed a tip credit under the FLSA so that they could pay employees less than the federal and state minimum wage.

**ANSWER:**    **Admitted that 77 Grandville claimed the statutory "tip credit" for Plaintiff. All other allegations are denied as untrue.**

137.    Defendants required and continue to require plaintiff and the FLSA Collective to remit tips to managers and other non-tipped employees.

**ANSWER:** Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action. The remaining allegations are denied as untrue.

138.   Defendants required and continue to require plaintiff and the FLSA Collective to work additional hours to clean the restaurant beyond their shifts serving customers. Plaintiff and the FLSA Collective were not paid, or paid at a rate below, minimum wage for these hours.

**ANSWER:** Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action. The remaining allegations are denied as untrue.

139.   Defendants required and continue to require plaintiff and the FLSA Collective to attend training sessions for the benefit of defendants without pay.

**ANSWER:** Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action. The remaining allegations are denied as untrue.

140.   By the acts and conduct described above, defendants willfully violated the provisions of the FLSA and disregarded the rights of plaintiff and the FLSA Collective.

**ANSWER:** Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action. The remaining allegations are denied as untrue.

141.   Plaintiff and the FLSA Collective have been damaged by defendants' willful failure to pay minimum wage as required by law.

**ANSWER:** Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action. The remaining allegations are denied as untrue.

142.   As a result of defendants' willful violations, plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

**ANSWER:** Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action. The remaining allegations are denied as untrue.

**Failure to Pay Overtime Wages-Fair Labor Standards Act
(On Behalf of Plaintiff and the FLSA Collective)**

143. Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

**ANSWER:** **Defendants incorporate by reference their answers to the preceding allegations as if fully reinstated herein.**

144. Plaintiff and the FLSA Collective worked more than forty hours in one or more workweeks.

**ANSWER:** **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action. Admitted that, on occasion, Plaintiff worked more than 40 hours in a week. The remaining allegations are denied as untrue.**

145. Because defendants did not accurately record the plaintiff and the FLSA Collective's hours worked, defendants did not pay plaintiff and the FLSA Collective at least one and a half times their normal hourly rate for time worked in excess of forty hours per workweek.

**ANSWER:** **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action. The remaining allegations are denied as untrue.**

146. By not paying plaintiff and the FLSA Collective proper overtime wages for time worked in excess of forty hours in a workweek, defendants have willfully violated the FLSA.

**ANSWER:** **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action. The remaining allegations are denied as untrue.**

147. As a result of defendants willful violations, plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

**ANSWER:** Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action. The remaining allegations are denied as untrue.

### COUNT III

**Failure to Pay Minimum Wage - M.C.L. §408.414**
**(On Behalf of Plaintiff and Rule 23 Class)**

148. Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

**ANSWER:** Defendants incorporate by reference their answers to the preceding allegations as if fully reinstated herein.

149. Defendants claimed a tip credit so that they could pay bartenders and servers less than the minimum wage.

**ANSWER:** Denied as untrue.

150. Defendants required plaintiff and the Rule 23 Class to share tips with managers and other non-tipped employees.

**ANSWER:** Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action. The remaining allegations are denied as untrue.

151. Defendants required plaintiff and the Rule 23 Class to work hours cleaning the restaurant and in training without compensation.

**ANSWER:** Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action. The remaining allegations are denied as untrue.

152. The Michigan Workforce Opportunity Wage Act, M.C.L. §408.411, et seq. requires that employers be paid not less than minimum wage as determined by an inflation index (currently $9.25/hour) for all hours worked.

**ANSWER:** The Michigan Workforce Opportunity Wage Act speaks for itself. The remaining allegations are denied as untrue.

153.    Because defendants required plaintiff and the Rule 23 Class to share tips with managers and other non-tipped employees, defendants were not entitled to a tip credit and failed to pay plaintiff and Rule 23 Class minimum wage.

**ANSWER:**    **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action.  The remaining allegations are denied as untrue.**

154.    By not paying plaintiff and the Rule 23 Class at least minimum wage for each hour worked, defendants have violated M.C.L. §408.414.

**ANSWER:**    **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action.  The remaining allegations are denied as untrue.**

155.    By not paying plaintiff and the Rule 23 Class at least one and one half times minimum wage for each hour worked over forty (40) hours per week, defendants have violated M.C.L. §408.414a(1).

**ANSWER:**    **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action.  The remaining allegations are denied as untrue.**

156.    As a result of defendants' violations, plaintiff and Rule 23 Class are entitled to damages, including, but not limited to unpaid wages, unpaid overtime, liquidated damages, costs, and attorney fees pursuant to M.C.L. §408.419.

**ANSWER:**    **Denied that Plaintiff has a cause of action against Defendants and denied that Plaintiff's claims are suitable for class or collective action.  The remaining allegations are denied as untrue.**

**WHEREFORE, Defendants request that the Court dismiss Plaintiff's Complaint in its entirety and with prejudice, enter judgment in favor of Defendants and against Plaintiff, and award Defendants their costs and attorney fees incurred in defense of this action.**

Respectfully submitted,

Date:  May 8, 2019

By: */s/ Jeffrey G. Muth*
    Jeffrey G. Muth (P65041)
    Matthew M. O'Rourke (P79019)
    MILLER JOHNSON
    45 Ottawa Avenue, SW, Suite 1100
    Grand Rapids, MI  49503
    616.831.1700
    muthj@millerjohnson.com
    orourkem@millerjohnson.com

    John W. Inhulsen
    INHULSEN LAW PLC
    250 Monroe Ave. NW, Suite 400
    Grand Rapids, MI  49503
    616.747.0000
    john@inhulsen.com

    Attorneys for Defendants

## AFFIRMATIVE AND OTHER DEFENSES

A.    The Complaint fails to state a claim upon which relief may be granted, either on Plaintiff's behalf or on behalf of those individuals who are allegedly similarly situated to Plaintiff.

B.    Plaintiff's claims for relief and the claims of any individual Plaintiff seeks to represent are or may be barred, in whole or in part, by the equitable doctrines of waiver, estoppel, and/or unclean hands, including where Plaintiff and the individuals she seeks to represent did not record their time properly, accurately, and/or completely.

C.    Plaintiff's claims and the claims of any individuals Plaintiff seeks to represent are barred to the extent that they were not filed within the applicable statutes of limitations.

D.    Defendants have reasonable grounds for believing that any act or omission of which Plaintiff or any individuals she seeks to represent complain are not a violation of the FLSA or Michigan law.

E.    Plaintiff's claims and the claims of any individuals Plaintiff seeks to represent are barred to the extent that the time periods for which they are claiming entitlement to compensation fall within the *de minimis* exception to the applicable laws.

F.    Plaintiff and any individuals Plaintiff seeks to represent have been paid all monies that they are owed by Defendants.

G.  Plaintiff's claims and the claims of any individuals Plaintiff seeks to represent are barred in whole or in part by the doctrine of ratification.  Defendant had policies relating to the correction of time records and payroll mistakes, and Plaintiff was aware of these policies. To the extent that Plaintiff or the individuals she seeks to represent failed to inform Defendants of any alleged inaccuracies in their time or payroll records, those individuals ratified the conduct of which Plaintiff now complains.

H.  This case may not be maintained as a collective action because Plaintiff cannot establish the existence of each of the requirements under 29 U.S.C. § 216(b) and other relevant legal authority.

I.  This case may not be maintained as a class action because Plaintiff cannot establish the existence of each of the requirements under Fed. R. Civ. P. 23 and other relevant legal authority.

J.  Defendants reserve the right to assert other additional affirmative or other defenses that may become known through discovery.

Respectfully submitted,


Date:  May 8, 2019                    By: */s/ Jeffrey G. Muth*
                                            Jeffrey G. Muth (P65041)
                                            Matthew M. O'Rourke (P79019)
                                            MILLER JOHNSON
                                            45 Ottawa Avenue, SW, Suite 1100
                                            Grand Rapids, MI  49503
                                            616.831.1700
                                            muthj@millerjohnson.com
                                            orourkem@millerjohnson.com

                                            John W. Inhulsen
                                            INHULSEN LAW PLC
                                            250 Monroe Ave. NW, Suite 400
                                            Grand Rapids, MI  49503
                                            616.747.0000
                                            john@inhulsen.com

                                            Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 8, 2019 the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or by U.S. first class mail for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

Date: May 8, 2019    By: */s/ Jeffrey G. Muth*
                                        Jeffrey G. Muth (P65041)
                                        Matthew M. O'Rourke (P79019)
                                        MILLER JOHNSON
                                        45 Ottawa Avenue, SW, Suite 1100
                                        Grand Rapids, MI 49503
                                        616.831.1700
                                        muthj@millerjohnson.com
                                        orourkem@millerjohnson.com

MJ_DMS 30695973v4 46313-1