# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

———————————

SHANELL HODGES,
*On behalf of herself and*
*those similarly situated,*

Civil Action No.: 1:19-cv-00081

HON.: PAUL L. MALONEY

Plaintiff,

v.

77 GRANDVILLE, INC.,
a Michigan profit corporation, and
KRIS ELLIOTT and DAX HYLARIDES,
individuals,

Defendants.

———————————————————————————————————————

Bradley K. Glazier (P35523)
Robert M. Howard (P80740)
BOS & GLAZIER, P.L.C.
Attorneys for Plaintiff
990 Monroe Avenue, N.W.
Grand Rapids, MI 49503
(616) 458-6814

Jeffrey G. Muth (P65041)
Matthew M. O'Rourke (P79019)
MILLER JOHNSON
Attorneys for Defendant
45 Ottawa Avenue, S.W., Ste. 1100
Grand Rapids, MI 49503
(616) 831-1700

John W. Inhulsen (P69137)
INHULSEN LAW, P.L.C.
250 Monroe Avenue, N.W., Ste. 400
Grand Rapids, MI 49503
(616) 747-0000

———————————————————————————————————————

## BRIEF IN SUPPORT OF JOINT MOTION
## FOR PRELIMINARY SETTLEMENT APPROVAL

### I.   INTRODUCTION

Plaintiff Shanell Hodges and Defendants 77 Grandville, Inc, Kris Elliott, and Dax

Hylarides ("Defendants") have reached an agreement to resolve this lawsuit and to seek

this Court's approval of a proposed settlement.  In this joint motion, the parties' request this

00149595.WPD

Court to grant preliminary approval of the parties' settlement agreement, authorize distribution of a notice of settlement, and certify this case as a Rule 23 class action for settlement purposes. Because the terms of the settlement are fair to all current collective action and proposed class members, and because the process for informing the proposed class of this settlement meets the criteria for court approval of class settlements, this Court should grant Hodges' motion.

## II.    FACTS

### A.    The background and procedural history.

Hodges worked at 77 Grandville as a server and bartender. She began her employment as a server in March of 2017. The defendant corporation, 77 Grandville, Inc., does business as the Grand Woods Lounge (referred to in this brief as "77 Grandville"). Hylarides and Elliott are shareholders of the company.  Hodges filed a class and collective action complaint against the defendants on February 4, 2019.  (Dates described in this brief are from 2019, unless a different year is referenced). The suit was filed on behalf of herself and similarly situated bartenders and servers. It alleged wage and hour violations under the Fair Labor Standards Act, 29 U.S.C. Sections 201 et seq. (the "FLSA" claims) and the Michigan Workforce Opportunity Act, Sections 408.411 et seq. (the "MWOA" claims). (ECF #1).

On May 29, Hodges filed a motion for conditional class certification.  The defendants opposed the motion. (ECF #18). On October 18, Magistrate Judge Ray Kent entered an order conditionally certifying a class consisting of current and former bartenders and servers employed by defendants at the 77 Grandville. The order allowed class counsel to send notice of the class to bartenders and servers who were employed at the 77 Grandville

over the past three years. (ECF #37).

Twenty six current or former bartenders and servers joined Hodges in the conditionally certified collective action by sending signed opt-in forms to Hodges counsel. Those forms have been filed with the court (ECFs #38, #39, #40, and #46 through #50). The time for potential class members to opt into the collective action under the FLSA. expired on March 11, 2020.  Hodges had not yet sought approval from the court to establish an opt-out Federal Rule of Civil Procedure 23 class. Her complaint sought to certify a Rule 23 class, consisting of all current and former bartenders and servers who have Michigan wage and hour claims against the defendants. (Amended Complaint, ECF #15, Page.ID 104-107).

### B.   The disputed facts and key issues.

The primary claims raised in the lawsuit relate to two different pay practices. Whether defendants paid servers and bartenders for all hours that were worked, and whether defendants followed the rules that allow restaurants to pool tips. The first pay practice only impacted servers and bartenders who worked at 77 Grandville on weekends after closing time to clean the facility. The second pay practice (tip pooling) impacted most of the servers and bartenders, regardless of the shifts they worked.

The dispute in connection with payment of employees who stayed late on weekends centered on when the employees left work. The parties disputed how much time was spent cleaning after the 77 Grandville closed and the proper compensation for that time.

Tip pooling is the collection of all (or a portion of all) the tips directly from tipped staff to be put into a pool and redistributed to a larger group of employees. Under the FLSA, tip pooling is permissible, but employers many not require participants to share their tips with

certain non-tipped employees or management. The FLSA allows employers to claim a "tip credit" and pay employees less than the full minimum wage as long as the employer follows the rules for a tip credit. This allows an employer to count tips received by the employee as a portion of the minimum wage requirements. Requiring employees to share with non-tipped employees violates the tip credit rules.

Following Magistrate Judge Kent's order approving a collective action, and following the expiration of the opt-in period, the parties engaged in the exchange of written discovery on these two issues. 77 Grandville produced documents describing its policies on payment of wages and tip sharing.  Included in the production were time sheets and other information showing the shifts worked by the class members. The time sheets substantiated the hours worked by servers and bartenders whose shifts ended before closing time.  But the time sheets did not include the employee's notations on when their shifts ended if they stayed after the bar closed and helped clean the bar. Defendants claimed that managers completed the time sheets by listing the time that the last worker left the bar. Hodges claimed that she and other servers and bartenders worked until 4:00 or 5:00 a.m. on weekend nights and other special occasions and were shorted on their hours.

The parties also disputed whether tips were properly distributed under the 77 Grandville tip-pooling arrangement. Hodges and other opt-in plaintiffs asserted that the tip-pooling at 77 Grandville was mandatory, citing to provisions in the handbook suggesting that tip-pooling was required.  Defendants asserted that the servers and bartenders could keep their own tips, or share them with other 77 Grandville employees.  Hodges also asserted that tips were improperly shared with kitchen staff, who received a regular

minimum hourly wage, and who Hodges claimed were not entitled to participate in a tip pool.

### C.     The settlement reached through voluntary facilitative mediation.

At the Rule 16 conference held on June 13, 2019, the parties agreed to seek to resolve the issues in this lawsuit through VFM. (ECF #29). On April 14 and 15, 2020, the parties participated in a voluntary facilitative mediation with Lee Silver serving as the mediator. After protracted negotiations, the parties reached a settlement in principal. They notified the court through a joint submission that preliminary approval of the settlement would be sought. (ECF #68). Since reaching an agreement in principle, the parties have negotiated over and agreed upon a formal settlement agreement and supplemental settlement agreement. Hodges now presents those agreements to the Court for consideration and approval.

### D.     Summary of the settlement terms.

The settlement agreement creates two separate settlement funds. One fund compensates the class members for a release of their FLSA and MWOA claims. The other settlement fund compensates the opt in class members for a general release of all other employment related claims. The first fund is described more particularly in a settlement agreement attached as Exhibit 1. The second fund is described in a confidential supplemental settlement agreement attached as Exhibit 2. (The parties have filed a motion seeking an order that restricts public access to this exhibit until such time that the court rules on the motion for approval of the settlement). A Notice of Settlement, attached as Exhibit 1A, will be distributed to all servers and bartenders employed in the last three years,

explaining the terms of the settlement, and giving them an opportunity to object or opt out of this settlement. The settlement fund will then be distributed to the class members on a pro rata basis for opt in members and a flat amount will be paid to the Rule 23 members. In other words, after fees, expenses, administration costs, and service awards, the entire fund will be divided and distributed to the class members.

The Settlement Fund is prorated among opt-in class members based on three factors (1) how many hours each class member worked; (2) how many hours were worked after 3:00 a.m., without alleged compensation; and (3) the sum of class members' tips that reverted to the kitchen staff or the employer.  (Exhibit 1, ¶35(a); Exhibit 2, ¶4(b)). The Rule 23 class members are to be paid an amount not less than the least amount paid to an opt-in class member. See Exhibit 1, ¶35(b). Under the Settlement Agreement, the 97 potential class members who did not opt into the FLSA class will receive at least $200 ($300 less a $100 attorney fee for each class member).  Id.

The 27 Opt In Class Members will share in two funds, one $64,000 fund, and another with a confidential sum. (Exhibit 2, 4(a)). Both funds will be distributed based on the percentage of the lost tips and wages of each Opt In Class Member applied to the total damages of the all of the Opt In Class Members.  One payment will be considered as W-2 wages. The second payment, to be made under the confidential Supplemental Settlement Agreement and Release will be considered a 1099 non-wage payment.  In exchange for this payment, the Opt In plaintiffs will sign a release of all of their employment related claims against 77 Grandville and agree to keep this payment confidential.  (Exhibit 2, ¶ 9).

Any class member who fails to cash his or her check(s) (or do not receive them) will have 90 days to contact the Claims Administrator to receive a reissued check.  (Exhibit 1

¶ 35(c)). Any sums left in Settlement Fund after 180 days (from potential class members who opt out of the class, who cannot be located, or who do not accept payment) will be paid to the Employee Rights Advocacy Institute for Law & Policy, a non-profit organization supporting workers' rights.  Id.

The Rule 23 Class Members who do not opt out of the lawsuit will release the defendants "from any and all claims, rights, demands, liabilities and causes of action arising during the Release Period under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA") and Michigan state and local wage and hour claims (including but not limited to claims under the common law (e.g., breach of contract, unjust enrichment, etc.,) and Michigan Workforce Opportunity Wage Act, M.C.L. § 408.411 et seq., and M.C.L. § 408.931 et seq.) relating to claims for unpaid wages, tip credit violations, unauthorized tip deductions, and tip credit notice claims, and based on facts asserted in the Actions." (Exhibit 1, ¶ 47).

### III.   LEGAL ISSUES AND ANALYSIS

#### A.   Standard for Approval of Wage and Hour Law Settlements

Courts in this circuit typically use a three-step procedure for approving class action settlements. *Merkner v. AK Steel Corp*., No. 1:09-cv-423, 2011 WL 13202401, at *1 (S.D. Ohio Jan. 10, 2011). At this, the first step, the Court determines whether to preliminarily approve the settlement. *Id.* Next, notice of the settlement is sent to interested persons. *Id.* Finally, courts must decide whether to finalize approval of the settlement after holding a hearing. *Id*. A court's role is to determine "whether a settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Bautista v. Twin Lakes Farms, Inc.,* No.

104-cv-483, 2007 WL 329162, at *4 (W.D. Mich. Jan. 31, 2007).

Although not necessary at this stage, this brief will address the factors courts in this circuit typically analyze in evaluating a settlement for final approval:

- the strength of the case on its merits, balanced by the settlement amount;
- the defendants' ability to pay;
- the complexity, expense, and length of further litigation;
- the amount of opposition to the settlement;
- the presence of collusion in reaching a settlement;
  the opinion of competent counsel;
- and the stage of proceedings and the amount of discovery completed.

*Id.*

### 1.    The strength of the case and the settlement amount.

The parties dispute the strength of the plaintiffs' case. There are both legal and factual questions in dispute. On the failure to pay wages after weekend closings, the legal question is whether the 77 Grandville was permitted to take a tip credit (pay the lower hourly wage allowed for tipped employees) for the work bartenders and servers completed after the bar closed. The defendants point to a Department of Labor's Wage & Hour Field Operations Handbook that states:

> An employer may take a tip credit for any amount of time that an employee spends on related, non-tipped duties performed contemporaneously with the tipped duties—or for a reasonable time immediately before or after performing the tipped duties—regardless whether those duties involve direct customer service.

Hodges asserted that the cleaning work she and others performed was not performed contemporaneous with the food and drink service they performed nor was the cleaning work completed within a reasonable time after performing the tipped duties.

On the failure to pay for all hours worked, there was a fact issue over when the collective members stopped working on the weekend shifts. Because the time sheets did not record the end the shift, the jury could believe the plaintiffs who would testify that they

worked until 4:30 a.m, on average, or the defendants who would testify that the employees worked until 3:00 a.m., on average.

Defendants were also prepared to show the bartenders and severs received substantial tips which drove their total hourly compensation well above Michigan's minimum wage for non-tipped workers. There were also legal and factual disputes regarding the proper statute of limitations (i.e., did defendants' act willfully) and whether liquidated damages applied (i.e., did defendants act in good faith and with a reasonable basis).

Both sides were confident in their respective legal and factual positions on these issues.  A trial presented a high-risk scenario for both parties (particularly when considering the current state of the restaurant business during the COVID-19 pandemic). The settlement that was agreed to reflects the risks facing both sides. Based on the hours worked by Hodges (who tracked her time using a phone app, in addition to completing the paper sign in sheet used at 77 Grandville), and assuming an 18% tip rate, the opt in class members will receive compensation (before reductions for costs and attorney fees) at approximately eighty-eight percent of their claimed damages for the three year period allowed for willful violations of the FLSA and the MWOA.

This settlement amount compares favorably to other restaurant FLSA cases involving similar issues. See *Osman v. Grube, Inc.*, 2018 WL 2095172, at *5 (N.D.Ohio, 2018). ("The Settlement provides for a 50% forfeiture of the tip credit for Plaintiffs who worked before November 15, 2015, which represents 50% of the alleged owed wages at stake in the case for those Plaintiffs.").  The recovery in this case also exceeds the average wage recovery in FLSA cases. *Dillworth v. Case Farms Processing, Inc.*, No.

10

5:08–CV–1694, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) (finding that a recovery of one-third of the owed wages for class members, before deducting attorneys' fees and costs, is "well above" average).

The plaintiffs do not receive liquidated damages, but such damages may have not been awarded by the court even if the plaintiff's had prevailed at trial. The plaintiffs also faced the risk that a future motion for Rule 23 class certification would have been denied and the collective action class decertified. When all of these factors are considered, the settlement for the opt-in plaintiffs is fair and reasonable.

The opt-in plaintiffs will also receive an separate sum in exchange for a general release of all employment-related claims. Courts have held that a separate general release that extends beyond FLSA claims does not undermine the fairness of a FLSA settlement, especially where the plaintiff receives independent consideration for the general release. See, e.g., *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1178-79 (S.D. Cal. 2016); *Talavera v. Sun-Maid Growers of Cal.*, No. 1:15-cv-00842-DAD-SAB, 2020 WL 2195115, at *9 (E.D. Cal. May 6, 2020) (approving a FLSA settlement where the plaintiff was paid an additional sum in exchange for a general release); *Dong Kim v. Confidential Studio Inc.*, No. 15-410, 2017 WL 3592455, at *3 (D. Md. Aug. 21, 2017) (same).

The servers and bartenders who did not opt in also receive a fair settlement. Discovery has disclosed that there was a substantial disparity among the opt in class members' damages. It appears that the persons who choose not to opt into the collective class, were likely those who received fewer tips, worked fewer hours, or who did not did wish to share the risks that the opt-in plaintiffs agreed to share. The settlement pays those persons who do not choose to opt out of the settlement class, $300 per person before

reductions for attorney fees. A sum of $18,600 will be distributed equally to the 93 members who do not opt out of the Rule 23 class.

This sum ($200) is equal to the minimum amount being paid to the opt-in members of the collective class before reductions for costs and attorney fees. Courts have approved settlements that include a much larger disparity between an individual payout made to opt in collective action members and to opt out Rule 23 members. See *Stephens v. Farmers Restaurant Group*, 329 F.R.D. 476, 482 (D.D.C., 2019) ("The 119 individuals who opted in to the collective action will receive a total of $498,715, to be distributed to each individual based on the total number of weeks that he or she worked as a server during the applicable time period. *Id*. ¶¶ 10.6-.7. The remaining $524,285 will be allocated to the 862 putative Rule 23 class members and distributed to each individual who timely submits a claim form."). The average payout to the opt-in members in *Stephens* was $26,248.15 verses $608.22 for the opt out members.

## 2. The defendants' ability to pay.

As part of the settlement agreement terms, the defendants have deposited the total amount of the settlement payment in a trust account with their counsel. The risk that defendants may not have been able to pay a judgment at the conclusion of this litigation was a legitimate concern of the plaintiffs. A defendants' capacity to pay for a larger settlement following protracted litigation may be weighed in evaluating the fairness of a settlement. See, e.g., *Bautista v. Twin Lakes Farms, Inc.,* 2007 WL 329162, at *5.

Defendants operate a restaurant/bar in Grand Rapids. Based on plaintiff's counsel's knowledge of this industry, as well as statements made by defendants during the

settlement negotiations, plaintiff questions whether defendants would have the capacity to engage in protracted, expensive litigation, and then pay an amount significantly higher than this settlement. Defendants are not generating any income due to the current Executive Order that shut down their operations during the COVID-19 pandemic. Based on these considerations, plaintiff believes that this settlement is the best result for all parties.

### 3. The complexity, expense, and length of further litigation.

Wage and hour class and collective actions are inherently complex and time-consuming. *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 185 (W.D.N.Y. 2005)*; see also Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, at *3 (S.D. Ohio Nov. 25, 2019). This factor weighs in favor of settlement.

### 4. The presence of collusion in reaching a settlement.

There is no evidence of collusion between the parties or their counsel. The proposed settlement was not presented to the Court for approval without discovery or evidence of compromise by both sides. The parties reached this settlement after a mediation conducted by a well-respected mediator over the course of two days. The parties reached this settlement through the adversarial process and at arms-length. This factor supports settlement approval.

### 5. The opinion of competent counsel.

Class counsel are experienced plaintiff side employment lawyers with experience in FLSA and Michigan wage and hour claims. Class counsel supports this settlement and believes it is fair, adequate, and reasonable. Defendants' counsel, who are also

experienced in this area, also support this settlement.

### 6.    The stage of proceedings and the amount of discovery completed.

This is an opportune time to settle this case. Conditional FLSA certification has been granted, and the notice/opt-in period is over, discovery is still ongoing. No depositions have been taken, but written discovery has been exchanged. The written discovery has enabled the plaintiff's counsel to calculate a close approximation of the precise amount of damages allegedly owed to the opt-in class members. Settling the case now saves the parties substantial time that would need to spent readying the case for trial. Appeals could also needlessly delay the case if it is not settled now. This factor weighs in favor of approving the settlement.  "Particularly at the preliminary-approval stage, it is enough that the parties represent that formal and informal discovery facilitated a significant investigation of the relevant facts contributing to arms-length settlement negotiation." *Stephens v. Farmers Restaurant Group*, 329 F.R.D. 476, 488 (D.D.C., 2019).

### B.    To facilitate the settlement, the Court should certify a settlement class of defendants' servers and bartenders.

Plaintiff brings her wage and hour claims under both the FLSA and Michigan law. Although the FLSA requires plaintiffs to affirmatively opt into a case, Rule 23 and Michigan law do not. Accordingly, employees may bring "hybrid" FLSA and state law actions. *Daoust v. Maru Rest., LLC,* No. 17- cv13879, 2019 WL 2866490, at *1 (E.D. Mich. July 3, 2019). In hybrid actions, the Court can certify both a collective action and a Rule 23 class action. *Id.* Rule 23 allows one or more individuals to act on behalf of a class of individuals with similar claims.

Representative actions are especially appropriate in wage and hour lawsuits where individual claims may be relatively small, but substantial in the aggregate. For settlement purposes, plaintiff asks the Court to certify hybrid class/collective class.  It is defined in the Settlement Agreement and Release as "[a]ll persons who are listed on Exhibits 1B and 1C attached [to the Settlement Agreement] (who the parties agree consist of all servers and bartenders who worked for Defendants during the Release Period)."  Exhibit 1, ¶25. The persons listed on Exhibit 1B are those who filed Opt In forms with Class Counsel. Those Settlement Class members are described as "Opt In Class Members." Settlement Class members who are not Opt In Class Members are listed in Exhibit 1C and referred to as "Remaining Class Members." consisting of a current and former bartenders and servers employed during the last three years at the Grand Woods Lounge.

"A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Courts have repeatedly granted Rule 23 class certification in similar cases filed by servers and bartenders. *See Daoust v. Maru Rest.*, LLC, No. 217CV13879TGBAPP, 2018 WL 7506167, at *1 (E.D. Mich. Apr. 13, 2018), *Castillo v. Morales, Inc.*, 302 F.R.D. 480, 487 (S.D. Ohio 2014), *Steele v. Leasing Enterprises, Ltd.*, 826 F.3d 237, 249 (5th Cir. 2016), *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 128 (S.D.N.Y. 2011), *Tiro v. Pub. House Investments, LLC*, 288 F.R.D. 272, 280 (S.D.N.Y. 2012), *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 77 (S.D.N.Y. 2018).

As described below, all of the requirements for class certification are met. Defendants do not oppose this certification for settlement purposes only.

### C.   Plaintiff has satisfied the four Rule 23(a) prerequisites for settlement class certification.

Under Rule 23(a), Plaintiff must satisfy four prerequisites in order for the Court to certify a class: (1) the class must be "so numerous that joinder of all members is impracticable," (2) "questions of law or fact common to the class" must exist, (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class," and (4) the representative parties must "fairly and adequately protect the interests of the class." As set forth below, for purposes of settlement each of these requirements is satisfied here.

### 1.   Numerosity.

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. "Plaintiffs need not demonstrate that it would be impossible to join all of the putative class members; rather, they need simply show that joinder would be difficult or inconvenient." *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 183 (S.D. Ohio 2012). No particular number has been set as the point at which the numerosity requirement is met. However, the modern trend is to require a minimum of between 21 to 40 members. See *Bautista v. Twin Lakes Farms, Inc*., 2007 WL 329162, at *2 (W.D.Mich., 2007)(J. Enslen). Here, the class members number 120 servers and bartenders.

### 2.   Commonality.

Rule 23(a)(2)'s commonality requirement is satisfied where there are "questions of law or fact common to the class." A single common question is sufficient to certify a class.

*Sprague v. General Motors Corp*., 133 F.3d 388, 397 (6th Cir. 1998). Here, the legal theories and relevant facts are common to the class because the class consists of workers who were all employed at the same location and were all paid or not paid the same way. The numerous common questions of law or fact, include: (1) were servers and bartenders informed of the tip credit, (2) were servers and bartenders required to contribute a portion of their tips to non-tipped employees, (3) whether defendants paid servers and bartenders who worked closing shifts for all hours worked, (4) whether defendants accurately recorded servers' and bartenders' hours, and (5) what damages and liquidated damages are available to the class members as a result of defendants' practices, if any.

### 3.  Typicality.

Rule 23(a)(3) requires that the class representatives' claims be typical of the class members' claims. Typicality "focuses on whether the interests of the class representative align[ ] with the interests of the absent class members such that the representative is working towards the benefit of the class as a whole." *Acevedo v. Brightview Landscapes, LLC*, No. CV 3:13-2529, 2017 WL 4354809, at *6 (M.D. Pa. Oct. 2, 2017). A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 557 (N.D. Ill. 2015) (*quoting Da La Fuente v. Stokely-Van Camp, Inc*., 713 F.2d 225, 232 (7th Cir. 1983)).

Here, plaintiff is a member of the putative class and her claims are typical of all class members' claims in that they all arise from the same alleged course of conduct. Plaintiff asserts that each claim in this lawsuit arises from defendants' pay practices that were applied to all employees at issue in the same way. For example, plaintiff asserts that the

same or similar tip-out rules applied to all class members. All servers and bartenders were paid a tipped wage rate. Whether defendants' pay practices are unlawful is a question answerable on a class-wide basis.

### 4.   Adequacy of representatives.

Rule 23(a)(4) requires that class representatives must fairly and adequately protect the interests of the class.  Courts should determine "whether the representative's interests conflict with those of the class and whether the class attorney is capable of representing the class." *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.3d 1026, 1031 (6th Cir. 1977). This requirement calls for a two pronged inquiry: (1) Do the representatives have common interests with the unnamed members of the proposed class? And (2) will the representatives vigorously prosecute the interests of the class through qualified counsel? *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996). Both requirements are met here.

With respect to the first inquiry, plaintiff is an adequate representative because she is challenging the same allegedly unlawful conduct and seeking the same relief as the rest of the class members. Thus, plaintiff's interests are aligned with those of the class members sufficient to satisfy the first prong of the adequacy requirement. *See, e.g., Swigart*, 288 F.R.D. at 186; *Smith v. Babcock*, 19 F.3d 257, n.13 (6th Cir. 1994).

With respect to the second inquiry, plaintiff's counsel is well-qualified to handle this matter. Plaintiff's counsel has prosecuted other FLSA claims on behalf of individuals and classes of employees. Plaintiff's lead counsel has over thirty years of experience in employment litigation. Plaintiff's counsel have actively and vigorously pursued plaintiff's (and the putative class members') claims in this case. Plaintiff's counsel has committed,

and will continue to commit, the resources necessary to representing the putative class in this case.

### D.  Plaintiff has satisfied the Rule 23(b)(3) requirements to certify a class for settlement purposes.

When the prerequisites of Rule 23(a) are satisfied, an action may be maintained as a class action when it qualifies under any one of three conditions set forth in Rule 23(b). Courts will certify class actions under Rule 23(b)(3) when common issues of fact and law predominate, and the class mechanism is superior to other methods of relief. As discussed below, both of Rule 23(b)(3)'s requirements are met in this case.

#### 1.  Common questions of law and fact predominate.

The predominance requirement evaluates whether a proposed class is cohesive enough to merit adjudication by representation. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Predominance is satisfied if the liability issue is common to the class—common questions are held to predominate over individual ones. *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007) (stating "[T]he predominance requirement is met if [a] common question is at the heart of the litigation."); *see also Moore v. PaineWebber, Inc.*, 306, F.3d 1247, 1252 (2d Cir. 2002) (finding predominance is established where "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.").

As described above, Hodges asserts that almost all questions in this case, legal and factual, are answerable on a class-wide basis. Most notably, liability turns on whether defendants' tip-out policy entitled them to claim a tip credit and pay servers and bartenders

a lower tipped wage. These issues would be determined based on common proof, and common questions predominate in this case.

In *McFarlin v. Word Enterprises, LLC*, No. 16-CV-12536, 2017 WL 4416451, at *4 (E.D. Mich. Oct. 5, 2017), the court explained that the general policies of the defendant predominated over individual inquiries. The *McFarlin* court stated that although damages for the employees were an individual determination, "the damages arise from a course of conduct that is applicable to the entire class: Defendants' payroll practices. Therefore, the predominance requirement is met. *Id*. at *4.

Although the amount of calculable damages will be different for each class member in the opt in collective class (based on the number of hours worked and the amount of tips received), the policies and practices of the defendants will be the predominate issue.

### 2.    A class action is a superior method of adjudication.

The superiority question under Rule 23(b)(3) requires the Court to consider whether a class action is superior to other methods of adjudication. Rule 23(b)(3) lists four factors to be considered: (1) the interests of class members in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action.

Here, there is no evidence that putative class members have any interest in maintaining this litigation in separate actions. Indeed, the relative size of the individual claims in this case makes class resolution perhaps the only way these workers can recover their allegedly unpaid wages in an economical way. *See, e.g., Tedrow v. Cowles*, No.

2:06-cv-637, 2007 WL 2688276, at *8 (S.D. Ohio 2007) ("As Plaintiffs convincingly argue, the majority of putative class members would not likely have their day in court on these claims if a class is not certified because of a lack of sophistication, lack of resources, lack of representation and similar barriers."). While some class members are owed ten or twenty thousand dollars, there are many who are only owed a few hundred dollars.

Moreover, efficiency weighs in favor of concentrating the claims in this Court, as there is no record of other, similar litigation pending against the defendants. Resolving defendants' liability with finality and without inconsistent, competing decisions is fair because the case addresses policies affecting many employees. There is no device that can resolve these matters as efficiently and fairly as a class action. Finally, no major difficulty is likely to arise in management of the class action as the putative class is a defined size and the defendants' records contain the identities and contact information for all potential class members.  Adjudicating this matter as a class action is the most efficient and fair manner of resolving these claims.

### E.    The Class Settlement Notice is appropriate and should be approved.

The Notice of Class Action (attached as Exhibit 1A) is appropriate and should be approved. The proposed notice informs eligible class members of the general terms of the settlement, including how class members may opt out, how class members can object, the amount of the settlement payment to which they are entitled, the scope of the release, and the inclusion of an attorneys' fee award. *Koszyk v. Country Financial Servs.*, No. 16 Civ. 3571,2016 WL 5109196, at *2 (approving class notice that, inter alia, described settlement terms and fee allocation); *Zolkos v. Scriptfleet, Inc.*, 2014 WL 7011819, at *6 (N.D. Ill. Dec. 6, 12, 2014) (same). The Notice complies with all of the requirements of Fed. R. Civ. P.

23(c)(2) and (e).

**F.    The service award to Hodges should be approved.**

The settlement agreement allocates $10,000 as a service award to plaintiff Shanell Hodges. Named plaintiffs in class and collective action lawsuits play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *See, e.g., Cook v. Niedert*, 142 F.3d 1004, 1006 (7th Cir. 1998) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit."). As a result, "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Haught v. Summit Res., LLC*, No. 1:15-cv-0069, 2016 WL 1301011, at *7 (M.D. Pa. Apr. 4, 2016). This is especially true in employment litigation. *See Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.").

Hodges was a current employee of 77 Grandville when this lawsuit was filed.  She risked her retaliation by filing this action. Hodges kept records of her hours worked, gathered evidence of her unpaid hours, and communicated with other class members about this suit. She assisted in disseminating information to class members, reviewed discovery responses, was instrumental in counsel's efforts to calculate damages, ensured all class members were identified, and participated in a two-day mediation

The proposed incentive award to plaintiff is reasonable and a similar award has

been approved in other wage cases. *See Arledge v. Domino's Pizza, Inc*., No. 3:16-cv-386,

2018 WL 5023950, at *6 (S.D. Ohio Oct. 17, 2018) (approving $10,000 service award);

Mullins, 2019 WL 275711, at *6 (same); *Brandenburg*, 2019 WL 6310376, at *7 (same);

*Osman v. Grube, Inc.,* No. 3:16-CV-00802-JJH, 2018 WL 2095172, at *2 (N.D. Ohio May

4, 2018)( $7,500 to a restaurant server).

> ### G. Attorneys' Fees and Costs should be approved as fair and reasonable, subject to any Class Member objections at the Final Fairness Hearing.

The FLSA provides that the Court "shall, in addition to any judgment award to

plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the

costs of the action" for minimum wage violations. 29 U.S.C. § 216(b). Under the Settlement

Agreement (Exhibit 1 ¶ 32), plaintiff seeks an attorneys' fee award of one-third of the sum

of the two settlement funds as attorneys' fees. Courts in this Circuit favor the

"percentage-of-recovery" method for determining fees. *Daoust*, 2019 WL 2866490, at *5.

Here, class counsel's request of one-third of the fund "is reasonable and consistent with

the norms of class litigation in this circuit." *Id*., and *see Brandenburg*, 2019 WL 6310376,

at *5 (finding that one-third of a fund is "a normal fee amount in a wage and hour case.").

Plaintiff will move for an award of fees and expenses at final approval. Prior to that

time, plaintiff will not know the total expenses incurred, nor the total lodestar expended in

this case. At this time, plaintiff requests the Court provisionally approve plaintiff's fee

request, subject to review in light of any objections or other information relevant at final

approval.

## IV.    CONCLUSION

The parties respectfully submit that they have provided the Court with reasonable justification to preliminarily approve the settlement of this litigation pursuant to applicable law, and therefore requests that this Court enter an Order: (1) preliminarily approving the proposed settlement; (2) provisionally certifying the settlement class; (3) approving the content, form, and distribution of the class notice and claim form; (4) designating plaintiff as class representative, and preliminarily approving the service award for her; (5) appointing plaintiff's counsel as class counsel and provisionally approving class counsel's request for attorneys' fees and costs; (6) approving JND Class Action Administration to serve as the administrator under the terms of the estimate attached as Exhibit 1D; and (7) scheduling a fairness hearing to be held at 90 days after this court's preliminary approval of the settlement. After the notice period ends and before the fairness hearing, plaintiff will submit a Motion for Final Approval and for a dismissal of the suit.

Respectfully submitted

BOS & GLAZIER, P.L.C.
Attorneys for Plaintiffs

Date: May __, 2020            By:   _/s/ Bradley K. Glazier_
                                    Bradley K. Glazier (P33523)
                                    Robert M. Howard (P80740)

BUSINESS ADDRESS:
    990 Monroe Avenue, N.W.
    Grand Rapids, MI 49503
    (616) 458-6814

MILLER JOHNSON

Dated: May 22, 2020          By:   */s/ Matthew M. O'Rourke*
                                   Jeffrey G. Muth (P65041)
                                   Matthew M. O'Rourke (P79019)

                                   BUSINESS ADDRESS:
                                   45 Ottawa Avenue, SW, Suite 1100
                                   Grand Rapids, MI 49503
                                   616.831.1700

                                   INHULSEN LAW, P.L.C.

Dated: May 22, 2020          By:   */s/ John W. Inhulsen*
                                   John W. Inhulsen (P69137)
                                   INHULSEN LAW PLC
                                   250 Monroe Ave. NW, Suite 400
                                   Grand Rapids, MI 49503
                                   616.747.0000

                                   *Attorneys for Defendants*