## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") is entered into by and between Shanell Hodges ("Named Plaintiff"), the individuals who filed Opt-In forms listed on Exhibit A ("Opt-in Plaintiffs"), and the individuals who did not file Opt-In forms listed on Exhibit B ("Remaining Class Members") and Defendants 77 Grandville, Inc., Kris Elliott, and Dax Hylarides ("Defendants").  In this Agreement, the Named Plaintiff, Opt-in Plaintiffs, and Remaining Class Members are referred to as the "Settlement Class."  The Settlement Class and Defendants are collectively referred to as the Parties.

## RECITALS

The Parties desire to compromise and settle the claims in the lawsuit titled *Shanell Hodges v. 77 Grandville, Inc., Kris Elliott, and Dax Hylarides*, Case No. 1:19-cv-81, pending in the United States District Court for the Western District of Michigan.  This includes resolution of the following:

- Claims brought under the Fair Labor Standards Act, brought by the conditionally-certified FLSA collective action (Counts I and II);

- Claims under the Michigan Workforce Opportunity Wage Act (Count III) as to the proposed class action; and

- Any other related issues or disputes between the Parties (collectively, the "Lawsuit").

**THEREFORE**, the Parties expressly agree as follows:

1.    **Settlement Amounts.**  In consideration of the terms and conditions of this Agreement, including but not limited to the release of claims and dismissal of the Lawsuit with prejudice, Defendants agree to pay $188,900 ("Settlement Amount") in exchange for the releases discussed in this Agreement.  Defendants also agree to pay the Opt-in Plaintiffs an additional confidential sum ("Confidential Amount"), subject to the terms of a Confidential Settlement and Release Agreement ("Confidential Agreement"). Together, the Settlement Amount and the Confidential Amount are the "Total Settlement Payment."

Defendants will pay the Total Settlement Payment to the Administrator according to the terms of this Agreement.  The Administrator will allocate and pay the Total Settlement Payment as follows:

A.    Attorneys' Fees and Costs.

i.    Fees.  The Administrator will pay the Settlement Class's attorneys, Bos & Glazier, P.L.C. ("Class Counsel"), no more than $84,300, which is equal to one-third of the Total Settlement Payment.  For the avoidance of doubt: if the Total Settlement Payment increases or does not change, payment to Class Counsel will be $84,300.  If the Total Settlement Payment decreases, payment to Class Counsel will be one-third of the Total Settlement Payment.  The amount

1

described in this Paragraph 1(A)(i) includes the $100 of fees subtracted from each payment allocated to each Remaining Class Member pursuant to Section 1(E) below.

   ii. <u>Costs and Expenses.</u> The Administrator will pay Class Counsel $5,000 from the Settlement Amount for out-of-pocket costs and expenses, including but not limited to filing fees and mediator fees.

   iii. The Parties agree that any reduction in the amount of attorneys' fees, costs, and expenses will not be a basis for rendering the entire Agreement void or unenforceable.

  B. <u>Service Award.</u> The Administrator will pay Named Plaintiff, from the Settlement Amount, $10,000 as a "Service Award" for her service as a class representative and in consideration for her release of claims in this Agreement. The Service Award will not be treated as wages and will not be subject to withholdings and deductions. The Administrator will issue Plaintiff an IRS Form 1099 for the Service Award. The Parties agree that any reduction in the amount of the Service Award will not be a basis for rendering the entire Agreement void or unenforceable.

  C. <u>Settlement Administration Costs.</u> The Administrator will receive up to $7,000 for costs incurred in administering the settlement. Class Counsel will retain an administrator who will mail notices, forward return notices, process claim forms, mail individual checks, and report the payments to taxing authorities ("Administrator"). The Parties anticipate that these administration costs will not exceed $7,000. An administrator's estimate of fees and costs is attached as Exhibit C. Class Counsel will be responsible for and pay any administration costs above $7,000.

  D. <u>Payment to Opt-in Plaintiffs.</u> The Administrator will pay the Opt-in Plaintiffs $64,000 as part of this agreement ("Opt-In Settlement Amount"). The Administrator will use the spreadsheet prepared solely by Class Counsel and attached as Exhibit D to calculate individual payments to the Opt-in Plaintiffs. Each Opt-in Plaintiff will receive a proportionate share of the Opt-In Settlement Amount, based on his or her tip credit damages and unpaid cleaning hours. For example, Named Plaintiff will receive 17.72% of Opt-in Settlement Amount. The payment to each Opt-in Plaintiff subject to this Paragraph 1(D) is considered wages and will be subject to standard taxes and withholdings. The Administrator will issue an IRS Form W-2 for this payment.

  E. <u>Payment to Participating Class Members.</u> The Administrator will pay the Remaining Class Members the total gross sum of $18,600 ("Remaining Settlement Amount"). The Remaining Settlement Amount is comprised of $300 for each Remaining Class Member, less $100 in attorneys' fees, for a net payment of $200. Remaining Class Members will be those persons who do not timely submit a request to be excluded from the settlement of the Lawsuit and this Agreement. ("Participating Class Members"). This payment will not be treated as wages and will not be subject to withholdings and deductions. The Administrator will issue an IRS Form 1099 for these payments.

F.    Payment of Confidential Amount to Opt-in Plaintiffs.    The Administrator will pay the Opt-in Plaintiffs the Confidential Amount pursuant to the terms of the Confidential Agreement.

G.    Tax Allocation.

i.    Members of the Settlement Class are responsible for correctly characterizing for tax purposes any payment they receive pursuant to the terms of this Agreement.  They are also responsible for paying any taxes owed on such payment.  This includes, without limitation, any interest or penalties required by law.  Members of the Settlement Class will be responsible for all employee-related taxes on the payments received.

ii.    Defendants are responsible for the employer's share of the FICA taxes on any wage payments.  Defendants are also responsible for correctly characterizing for tax purposes and paying any taxes owed on any payments made pursuant to the terms of this Agreement.

H.    No Fringe Benefits.    None of the payments described in this Agreement will be subject to matching contributions or included as benefit-eligible earnings under any benefit plan or policy of the Defendants or any of their current or former parent companies, subsidiaries, or affiliates.

2.    **Settlement Procedures.**

A.    Motion for Preliminary Approval.    After the Parties execute this Agreement, Class Counsel will file a motion for preliminary approval of the settlement, applying to the Court for the entry of an Order that will be agreed upon by the Parties prior to submission.  The Order will:

i.    Preliminarily approve the settlement of the Lawsuit and preliminarily approve the Agreement;

ii.    Certify the Settlement Class for purposes of settling and resolving Count III of the Lawsuit;

iii.    Approve as to form the Notice of Rule 23 Class Action Settlement to be sent to each member of the Settlement Class (attached as Exhibit E) ("Notice");

iv.    Direct the distribution of the Notice by email and/or United States Postal Service First Class Mail to each member of the Settlement Class;

v.    Approve the proposed method by which a member of the Settlement Class may request exclusion from the settlement of Count III of the Lawsuit and this Agreement; and

vi.    Schedule a fairness hearing on the question of whether the proposed Agreement should be approved as fair, reasonable, and adequate as to the Settlement Class. The hearing shall be scheduled at least 90 days after the Administrator issues the notices described in Paragraph 2(c) of this Agreement.

B.    <u>Furnishing Motion and Brief to Defendants' Counsel.</u>  Class Counsel will provide a draft of the foregoing motion, brief, and Order to Defendants' counsel within seven business days after the execution of this Agreement. The Parties agree to work in good faith to resolve any issues and to file an unopposed motion, if possible.

C.    <u>Class Action Fairness Act ("CAFA") Notices.</u>  Within ten calendar days after Class Counsel files the motion for preliminary approval of the settlement of the Lawsuit and this Agreement, the Administrator will send notice to the appropriate federal and state officials in accordance with the CAFA. The Administrator shall be responsible for any and all other CAFA notices or obligations required by law with respect to this Agreement.

D.    <u>Class Data List.</u>  Within fourteen calendar days after Class Counsel files the motion for preliminary approval of the settlement of the Lawsuit and this Agreement, Defendants will provide to the Administrator the names, last known addresses, last known telephone numbers, and Social Security Numbers of the individuals in the Settlement Class ("Class Data List"). Defendants will provide Class Counsel with a copy of the Class Data List that does not include the Settlement Class members' Social Security Numbers. The Administrator and Class Counsel will use this information only to prepare the CAFA notices.

E.    <u>Notice to the Settlement Class.</u>

i.    Within ten calendar days after the Court preliminarily approves the settlement of the Lawsuit and this Agreement, the Administrator will send the Notice via email to each member of the Settlement Class for whom the Administrator has an email address.

ii.    If the Administrator does not have an email address for a member of the Settlement Class, or if the Administrator receives notice that the Notice was undeliverable via email, the Administrator will send the Notice to the member of the Settlement Class via United States Postal Service First Class Mail. The Administrator will report to the Parties the number of Notice emails that were returned as undeliverable.

iii.    For any Notice sent via United States Postal Service First Class Mail that is returned as undeliverable with a forwarding address, the Administrator will re-mail the Notice to the forwarding address. For any Notice that is returned as undeliverable without a forwarding address, the Administrator will take reasonable steps to obtain an updated address, including running a skip

4

trace search.  If the Administrator locates another address for the member of the Settlement Class, the Administrator will re-mail the Notice to the new address.

      F.     <u>Payment to the Administrator</u>. Within 14 calendar days after the Court preliminarily approves the settlement of the Lawsuit and this Agreement, Defendants will send or wire transfer to the Administrator the Total Settlement Payment.

      G.     <u>Objections to the Settlement.</u>

      i.     Remaining Class Members who wish to object to the settlement of Count III of the Lawsuit and this Agreement must serve on the Administrator a written statement with their objection and the grounds for their objection within 30 calendar days of the date that the Administrator first sends the Notice ("Objection Deadline").  The written objection must contain the information described in the Notice and must indicate whether the Remaining Class Member intends to appear and object to the settlement of Count III of the Lawsuit and the Agreement at a hearing held by the Court to determine whether to finally approve and implement the Agreement (the "Final Approval Hearing").  Remaining Class Members who timely serve on the Administrator a written objection statement are referred to as "Objecting Class Members."

      ii.     Remaining Class Members who do not submit a timely objection with the information described in the Notice will be deemed to have waived all objections and will be foreclosed from making any objection to the settlement of Count III of the Lawsuit and this Agreement, whether by appeal or otherwise, absent a contrary order of the Court.

      H.     <u>Requests for Exclusion.</u>

      i.     Remaining Class Members who wish to exclude themselves from the settlement of Count III of the Lawsuit and this Agreement (*i.e.*, opt-out of the settlement) must serve on the Administrator a written statement requesting that they be excluded from the Settlement Class before the expiration of the Objection Deadline.  Remaining Class Members who timely serve on the Administrator a written exclusion are referred to as "Excluded Class Members."

      ii.     Excluded Class Members will not be bound by the settlement of Count III of the Lawsuit, this Agreement, or any order or judgment of the Court in any respect.  Excluded Class Members will not be paid any amounts under the terms of this Agreement.

      iii.     Excluded Class Members may not file an objection to the settlement of Count III of the Lawsuit or this Agreement pursuant to Paragraph 2(G) and may not appear at the Final Approval Hearing to voice any objections to the settlement of Count III of the Lawsuit or this Agreement.

      iv.     Participating Class Members (*i.e.*, the Remaining Class Members who do not submit a timely request for exclusion with the information

described in the Notice) will be deemed to have waived their right to be excluded from the settlement of Count III of the Lawsuit and this Agreement.

          v.      If 10% or more of the Settlement Class are Excluded Class Members (*i.e.*, elect to exclude themselves from the settlement of Count III of the Lawsuit and this Agreement), then Defendants may in their sole discretion declare the Agreement null and void and the Lawsuit will proceed as if a settlement had not been reached. If Defendants declare the Agreement null and void according to the terms of this Paragraph 2(H)(v), nothing in this Paragraph shall prohibit the Parties from renegotiating the terms of a settlement to resolve the Lawsuit.

        I.      All Participating Class Members and all Opt-in Plaintiffs will be bound by all terms and conditions of this Agreement, releases, and by the judgment of the Court, regardless of whether they cash or negotiate their settlement check.

        J.      <u>Administrator's Notice to Counsel for the Parties.</u>

          i.      Within ten days after the Objection Deadline, the Administrator will provide counsel for the Parties:

            a.      A list of the Objecting Class Members and Excluded Class Members; and

            b.      The amount of the payment due to each Opt-in Plaintiff and Participating Class Member (the "Final Payment List"). The Parties will work together in good faith to agree to the Final Payment List and the payments due to each member of the Settlement Class.

        K.      <u>Final Approval.</u>

          i.      At least ten calendar days before the Final Approval Hearing, Class Counsel will file with the Court a motion for final approval of the settlement of the Lawsuit and this Agreement and a memorandum in support of the motion. Class Counsel will prepare the motion for final approval and will provide Defendants' counsel at least seven business days to review, comment on the content of, and decide if they will oppose the motion before it is filed.

          ii.      At least 20 calendar days before the Final Approval Hearing, the Administrator will provide the Parties' counsels a report specifying:

            a.      The due diligence that it undertook with regard to the mailing of the Notice; and

            b.      The names of Objecting Class Members and Excluded Class Members.

          iii.      Class Counsel will prepare a proposed Order and provide a copy to counsel for Defendants so that Defendants' counsel may comment on,

suggest edits to, or oppose the proposed Order, or submit an alternative proposed Order. The proposed Order prepared and submitted by Class Counsel will:

          a.     Approve the settlement of the Lawsuit and this Agreement; rule that their terms are fair, reasonable, and adequate; and direct consummation of their terms and provisions;

          b.     Certify the Rule 23 Class for purposes of the settlement of Count III of the Lawsuit and this Agreement;

          c.     Certify the FLSA collective pursuant to Section 216(b) for purpose of the settlement of Counts I and II the Lawsuit and this Agreement;

          d.     Approve Class Counsel's motion for attorneys' fees and expenses in amounts consistent with Paragraph 1 of this Agreement;

          e.     Approve the Named Plaintiff's Service Award; and

          f.     Dismiss the Lawsuit with prejudice, with the Court retaining jurisdiction to enforce and interpret the Agreement, including issues pertaining to claims made against the funds the remain from checks not cashed or negotiated within 180 days of receipt.

          iv.     The settlement of the Lawsuit and this Agreement shall be considered "Final" when the Court has granted final approval of the settlement of the Lawsuit and this Agreement and the applicable date for seeking appellate review of the Court's approval of this Agreement has passed without timely appeal, or an appellate court has rendered a final decision or judgment affirming the Court's final approval of the Agreement and the time for any further appeal has expired, or any timely appeal has been dismissed. The day the settlement of the Lawsuit and this Agreement becomes Final is the "Effective Date."

          v.     After the Effective Date, the Court will have continuing jurisdiction over the Lawsuit to enforce, interpret, and otherwise implement this Agreement through the expiration of the statute of limitations for all members of the Settlement Class.

        L.    <u>Claim Process.</u>

          i.     Within ten calendar days after the Effective Date, the Administrator will issue the following checks:

          a.     A check to Class Counsel in the amounts described in Section 1(A) of this Agreement;

          b.     A check to the Named Plaintiff as a Service Award in the amount described in Section 1(B) of this Agreement;

        c.      A check to each Opt-in Plaintiff in the amount described in Section 1(D) of this Agreement;

        d.      A check to each Participating Class Member in the amount of $200; and

        e.      A check to each Opt-in Plaintiff in the amount described in the Confidential Agreement.

        ii.      Each check issued to the Named Plaintiff and Opt-in Plaintiff (*i.e.*, the members of the FLSA collective action <u>and</u> the Rule 23 class action) will include the following release language to which the Named Plaintiff and Opt-in Plaintiffs have agreed to be bound by. The release language will be attached to or on the endorsement side of the check:

        By opting-in to the lawsuit described below, I agreed to a full, final, complete, and irrevocable release and waiver of all FLSA claims relating to claims for failure to pay wages and tip credit notice claims, and based on facts asserted in *Shanell Hodges et al. v. 77 Grandville, Inc. et al.* (Case No. 1:19-cv-00081-PLM-RSK), for the period from February 4, 2017 through April 15, 2020.

        By not excluding myself from the class described in the lawsuit, I also agreed to a full, final, complete, and irrevocable release and waiver of all Michigan state and local wage and hour claims (including but not limited to claims under the common law and Michigan Workforce Opportunity Wage Act, MCL § 408.411 *et seq.*, and MCL § 408.931 *et seq.*), relating to claims for failure to pay wages and tip credit notice claims, and based on facts asserted in *Shanell Hodges et al. v. 77 Grandville, Inc. et al.* (Case No. 1:19-cv-00081-PLM-RSK), for the period from February 4, 2017 through April 15, 2020.

        iii.      Each check issued to a Participating Class Member (*i.e.*, individuals who are <u>only</u> members of the Rule 23 class) will include the following release language to which the Participating Class Members have agreed to be bound by. The release language will be attached to or on the endorsement side of the check:

        By not excluding myself from the class described in the lawsuit, I agreed to a full, final, complete, and irrevocable release and waiver of all Michigan state and local wage and hour claims (including but not limited to claims under the common law and Michigan Workforce Opportunity Wage Act, MCL § 408.411 *et seq.*, and MCL § 408.931 *et seq.*), relating to claims for failure to pay wages and tip credit notice claims, and based on facts asserted in *Shanell Hodges et al. v. 77 Grandville, Inc. et al.* (Case No. 1:19-cv-00081-

PLM-RSK), for the period from February 4, 2017 through April 15, 2020.

M.   <u>Returned Checks.</u> If a settlement check is returned to the Administrator as undeliverable, the Administrator will take reasonable steps to locate an updated mailing address for that individual.  This includes, without limitation, enhanced skip tracing methods or calling or emailing the individual.

N.   <u>Reminder to Opt-in Plaintiffs and Participating Class Members.</u>  If a settlement check remains outstanding 60 days after the Administrator sends it, the Administrator will call the individual who has not cashed his or her check and remind him or her of the payment.  The Administrator will send a reminder email to individuals who cannot be reached by phone.

O.   <u>Unclaimed and Uncashed Checks.</u>

i.   If the check for an Opt-in Plaintiff or Participating Class member is unclaimed, uncashed, or otherwise not negotiated within 90 days after the Administrator sent the check, the Administrator will place the money in a "Reserve Fund."  The Reserve Fund will also contain the money that was allocated to Remaining Class Members who excluded themselves from this Agreement and became Excluded Class Members.

ii.   Two hundred days after the Administrator sent the last check (the "Reserve Fund Period"), the Administrator will pay any money in the Reserve Fund to the Employee Rights Advocacy Institute for Law & Policy, a non-profit organization supporting workers' rights.

P.   <u>Records and Disputes</u>.  If an Opt-in Plaintiff or Participating Class Member wishes to dispute the calculation of his or her settlement payment, the individual may so notify the Administrator and should produce any supporting information or evidence available to him or her.  The Administrator may consult with Class Counsel and counsel for Defendants in an attempt to resolve any disputes over the calculation of settlement payments.  In no case shall a dispute cause Defendants to pay more than the Total Settlement Payment.

3.   **<u>Release.</u>**

A.   <u>Counts I and II: Release of FLSA Claims by the FLSA Collective Action (Named Plaintiff and Opt-in Plaintiffs)</u>: Upon the Effective Date, the Named Plaintiff and the Opt-in Plaintiffs will release and forever discharge Defendants and each of their former and present predecessors, successors, parents, subsidiaries, divisions, insurers, board members, attorneys, and affiliates, whatever their current or former legal names or legal entity status, and each of their respective current and former owners, officers, directors, employees, partners, shareholders, and agents, and any other successors, assigns, or legal representatives ("Released Parties") from any and all claims, rights, demands, liabilities and causes of action arising during the Release Period under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") relating to claims for unpaid

wages, tip credit violations, unauthorized tip deductions, and tip credit notice claims, and based on facts asserted in the Lawsuit.

B.    <u>Count III: Release of Michigan state and local wage and hour claims by the Rule 23 Class Action (Named Plaintiff, Opt-in Plaintiffs, and Participating Class Members)</u>: Upon the Effective Date, the Named Plaintiff, Opt-in Plaintiffs, and Participating Class Members will release and forever discharge Defendants and each of their former and present predecessors, successors, parents, subsidiaries, divisions, insurers, board members, attorneys, and affiliates, whatever their current or former legal names or legal entity status, and each of their respective current and former owners, officers, directors, employees, partners, shareholders, and agents, and any other successors, assigns, or legal representatives ("Released Parties") from any and all claims, rights, demands, liabilities and causes of action arising during the Release Period under Michigan state and local wage and hour claims (including but not limited to claims under the common law (*e.g.*, breach of contract, unjust enrichment, etc.) and Michigan Workforce Opportunity Wage Act, M.C.L. § 408.411 *et seq.*, and M.C.L. § 408.931 *et seq.*) relating to claims for unpaid wages, tip credit violations, unauthorized tip deductions, and tip credit notice claims, and based on facts asserted in the Lawsuit.

C.    <u>Release of Fees and Costs (Named Plaintiff, Opt-in Plaintiffs, and Participating Class Members)</u>: Upon the Effective Date, the Named Plaintiff, the Opt-in Plaintiffs, and the Participating Class Members irrevocably and unconditionally release, acquit, and forever discharge any claim that they have or may have had against the Released Parties for attorneys' fees, costs, or expenses associated with the Lawsuit, including but not limited to the attorneys' fees, costs, or expenses associated with Class Counsel's representation of the Named Plaintiff, Opt-in Plaintiffs, and Participating Class Members in the Lawsuit, except as specifically provided for in this Agreement.  The Named Plaintiff, Opt-in Plaintiffs, and Participating Class Members further understand and agree that any fees and costs provided for in this Agreement are the full, final, and complete payment of all attorneys' fees, costs, and expenses associated with Class Counsel's representation in this Lawsuit.

4.    **Additional Provisions.**

A.    <u>No Waiver of Arbitration Agreements.</u>  The Parties agree that nothing in this Agreement waives any rights to enforce arbitration agreements entered into between Defendants and its employees or former employees who are not part of this Lawsuit.

B.    <u>Signatories.</u>  The respective signatories to this Agreement represent that they are fully authorized to enter into this Agreement and bind to this Agreement the respective entities for which the person is signing (as shown on the signature line).

C.    <u>Cooperation to Implement Settlement.</u>  The Parties agree to cooperate fully with each other to accomplish the terms of this Agreement, including but not limited to executing such documents and taking such other actions as may reasonably be necessary to implement the terms of the Agreement.  The Parties will use their best

efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court or otherwise, to effectuate the terms of the Agreement.

D.    Disputes.    Any dispute between the Parties concerning the interpretation or implementation of this Agreement will be resolved by the Court.  Before resorting to the Court, counsel for the Parties will confer in good faith to resolve the dispute. If the Parties are unable to resolve the dispute themselves, the dispute will be submitted to the Court unless the Parties agree otherwise.

E.    No Prior Assignments.  The Parties represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or right released and discharged in this Agreement.

F.    No Admission of Liability.    Defendants deny liability to the Settlement Class for any claim or cause of action.  Defendants have denied and continue to deny each of the claims and contentions alleged in this Lawsuit.  Defendants have repeatedly asserted and continue to assert defenses thereto, and have expressly denied and continue to deny any wrongdoing or legal liability arising out of any of the facts or conduct alleged in the Lawsuit. Defendants also have denied and continue to deny the allegations that the members of the Settlement Class have suffered damages or that the members of the Settlement Class were harmed by the conduct alleged in the Lawsuit. By entering into this Agreement, Defendants in no way admit to the suitability of the Lawsuit for class action litigation other than for purposes of settlement.

G.    Acknowledgment of Receipt of All Payments Owed.  The members of the Settlement Class acknowledge that, upon payment of the amounts detailed in Section 1, they have received all salary, wages, commissions, paid time off, overtime payments, reimbursements, liquidated damages, employee benefits, and all other payments that have accrued as of the Effective Date and to which they were or are entitled as a result of their employment with Defendants.

H.    Fair, Adequate, and Reasonable Settlement.    The Parties agree, based on the information known at the time of entering this Agreement, that the settlement of the Lawsuit and this Agreement are fair, adequate, and reasonable, and the Parties will represent it as such to the Court.  The Parties also agree that nothing herein is intended to, and will not be construed to, waive the confidentiality of the Confidential Amount or settlement negotiations and discussions.

I.    Waiver of Appeals.  The Parties agree to waive all appeals from the Court's final approval of the settlement of the Lawsuit and this Agreement, unless the Court materially modifies the settlement of the Lawsuit or the Agreement.  Provided, however, that the Settlement Class may appeal any reduction in the amount paid to Class Counsel under Paragraph 1(A) of this Agreement or any reduction in the Service Award to the Named Plaintiff under Paragraph 1(B) of this Agreement.  Any such reductions, although

they may be appealed, will not constitute a material modification of this Agreement and will not be grounds to void the settlement of the Lawsuit or this Agreement.

       J.     <u>No Tax Advice.</u>  Neither Class Counsel nor counsel for Defendants intends anything contained in this Agreement to constitute advice regarding taxes or taxability, nor will anything in this Agreement be relied upon as such within the meaning of United States Treasury Department Circular 230 (31 C.F.R. Part 10, as amended) or otherwise.

       K.     <u>Class Certification and Settlement Approval.</u>  In connection with the request for Preliminary Approval of the settlement of Count III of the Lawsuit and this Agreement, the Settlement Class will seek an order certifying the Settlement Class for settlement purposes only for the claims brought under Michigan law.  Defendants consent to the certification of the Settlement Class for settlement purposes only and contend that class certification would not be appropriate if the matter was litigated.

       L.     <u>Use of Confidential Documents and Information.</u>  Class Counsel agrees to keep confidential all documents and information produced in the course of discovery and litigation of the Lawsuit.  To the extent that Class Counsel has distributed any documents or information to the Named Plaintiff, an Opt-in Plaintiff, or any member of the Settlement Class, the individual who received such document or information agrees to return it to Class Counsel upon request.  All documents and information produced in discovery in the Lawsuit, otherwise obtained in the course of the litigation of the Lawsuit, and produced in connection with effectuation of the settlement of the Lawsuit and this Agreement (including contact information for members of the Settlement Class), will only be used for purposes directly related to the effectuation of the settlement of the Lawsuit and this Agreement.  This provision will not limit the Parties from candidly describing the terms of the proposed Agreement to the Court for the purposes of obtaining the Court's Final approval.  To the extent that any provision could be read to do so, it must be interpreted as though it does not restrict counsels' ability to practice law.

       M.     <u>Cooperation in Drafting.</u>  The Parties agree that the terms and conditions of this Agreement are the result of lengthy, intensive, arm's-length negotiations between the Parties, and that this Agreement will not be construed in favor of or against any Party by reason to the extent to which any Party, his, her, its, or their counsel participated in drafting.

       N.     <u>Applicable Law.</u>  All terms and conditions of this Agreement and its exhibits will be governed by and interpreted according to the laws of the State of Michigan, without giving effect to any conflict of law principles or choice of law principles.

       O.     <u>Captions and Headings.</u> Captions, headings, or paragraph titles in this Agreement are a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any provision.

       P.     <u>Modification.</u> This Agreement and the settlement of the Lawsuit may not be changed, altered, or modified, except in a writing signed by the Parties and

approved by the Court. This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.

Q.    Integration Clause. This Agreement and the Confidential Agreement contain the entire agreement between the Parties relating to the resolution of the Lawsuit. All prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party, are merged in this Agreement. No rights under this Settlement may be waived except in writing.

R.    Binding on Assigns. This Settlement Agreement is binding upon and inure to the benefit of the Parties and their respective heirs, trustee, executors, administrators, successors and assigns.

S.    Counterparts. This Settlement Agreement will be executed in counterparts, and when each Party has signed it in person or using electronic signature software, each counterpart will be deemed an original, and when taken together with other signed counterparts, will constitute one Agreement, which will be binding upon and effective as to all Parties.

5.    **Condition Precedent.** The settlement of the Lawsuit, this Agreement, and the payments, terms, conditions, and releases described in this Agreement are conditioned upon the Court's approval of the settlement and this Agreement.

77 Grandville, Inc.

_____    _____
Date    By:

_____    _____
Date    Kris Elliot

_____    _____
Date    Dax Hylarides

_____    _____
Date    Shanell Hodges (n/k/a Shanell Bosch)

MJ_DMS 33371874v1

# Exhibit A

00124632.WPD

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

---

SHANELL HODGES,
*On behalf of herself and
those similarly situated,*

       **Plaintiff,**

v.

77 GRANDVILLE, INC.,
a Michigan profit corporation, and
KRIS ELLIOTT and DAX HYLARIDES,
individuals,

       **Defendants.**

Civil Action No.: 1:19-cv-00081

HON.: PAUL L. MALONEY

---

| | |
|---|---|
| Bradley K. Glazier (P35523)<br>Robert M. Howard (P80740)<br>BOS & GLAZIER, P.L.C.<br>Attorneys for Plaintiff<br>990 Monroe Avenue, N.W.<br>Grand Rapids, MI 49503<br>(616) 458-6814 | Jeffrey G. Muth (P65041)<br>Matthew M. O'Rourke (P79019)<br>MILLER JOHNSON<br>Attorneys for Defendants<br>45 Ottawa Avenue, S.W., Ste. 1100<br>Grand Rapids, MI 49503<br>(616) 831-1700 |

---

## <u>CLASS MEMBERS WHO FILED OPT-IN NOTICES</u>

The following class members filed opt-in notices with the court.

| | |
|---|---|
| 1. Amanda Lowery | 15. Nicole White |
| 2. Antonio Kupe | 16. Summer Moore |
| 3. Brittany Prins | 17. Taylor Wilson |
| 4. Brogan Bendiner | 18. William Kelly |
| 5. Elizabeth Galloway | 19. Allison Linkfield |
| 6. Elizabeth Tusch | 20. Nikole LeCompte |
| 7. Elvira Perezic | 21. Kailey Maks |
| 8. Emilyanna Kellogg | 22. Samantha Crawford |
| 9. Gabriel Larson | 23. Nathan Bartos |
| 10. Hannah Suppes | 24. Sarah Pontbriand |
| 11. Julia Riccobono | 25. Michaela Allen |
| 12. Kylene Slocum | 26. Jalen Myers |
| 13. Leah Samuels | 27. Shanell Hodges |
| 14. Maryah Massop | |

# Exhibit B

00124632.WPD

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

---

SHANELL HODGES,
*On behalf of herself and
those similarly situated,*

                                    Plaintiff,

v.

77 GRANDVILLE, INC.,
a Michigan profit corporation, and
KRIS ELLIOTT and DAX HYLARIDES,
individuals,

                                    Defendants.

Civil Action No.: 1:19-cv-00081

HON.: PAUL L. MALONEY

---

Bradley K. Glazier (P35523)
Robert M. Howard (P80740)
BOS & GLAZIER, P.L.C.
Attorneys for Plaintiff
990 Monroe Avenue, N.W.
Grand Rapids, MI 49503
(616) 458-6814

Jeffrey G. Muth (P65041)
Matthew M. O'Rourke (P79019)
MILLER JOHNSON
Attorneys for Defendants
45 Ottawa Avenue, S.W., Ste. 1100
Grand Rapids, MI 49503
(616) 831-1700

---

## REMAINING CLASS MEMBERS

The following class members DID NOT file opt-in notices with the court.

| | | | |
|---|---|---|---|
| 1. | Adam Kotarski | 45. | Haylee Hall |
| 2. | Alejandra Lopez | 46. | Heather Johnson |
| 3. | Alexandra Nuttall | 47. | Holly Wondergem |
| 4. | Alexis Bush | 48. | Hunter Fedewa |
| 5. | Alicia Ashton | 49. | India Walker |
| 6. | Alison Durham | 50. | Islam Hoxha |
| 7. | Alycia Mckellar | 51. | Jazzlyn Yarbrough |
| 8. | Amanda Johnson | 52. | Jeff Folck |
| 9. | Amanda Sowa | 53. | Jenna Cronkhite |
| 10. | Amber Stewart | 54. | Jesse Hoffman |
| 11. | Angela Ritter | 55. | Jessica Mccarty |
| 12. | Antionette Day | 56. | Jillian Ashton |
| 13. | Ashley Buchanan | 57. | Jillian O'haire |
| 14. | Ashley Depetro | 58. | Jody Vo |
| 15. | Ashley Hall | 59. | Jose Rodriguez |
| 16. | Astrid Lopus | 60. | Joshua Vangorden |
| 17. | Bellah Nyamoga | 61. | Julianna Williams |
| 18. | Bethann Bucy | 62. | Katelyn Shuster |
| 19. | Brett Brown | 63. | Katerina J Pietrak |
| 20. | Brianna Jamison | 64. | Kelly Le |
| 21. | Brianna Kraft | 65. | Kendall Potts |
| 22. | Brittney Banister | 66. | Kirin Dempsey |
| 23. | Brittney Morren | 67. | Kris Gibbs |
| 24. | Brooklyn Voss | 68. | Kristin Smetanko |
| 25. | Carly Johnson | 69. | Kylee Hoaglund |
| 26. | Chandler Scott | 70. | Luke Roguska |
| 27. | Chelsea Cornell | 71. | Lydia Shepperly |
| 28. | Chelsea Hall | 72. | Maci Hughes |
| 29. | Chelsea Vink | 73. | Mackenzie Denton |
| 30. | Christopher Denhof | 74. | Margie Shepard |
| 31. | Cody Scott | 75. | Mary Welch |
| 32. | Courtney Deering | 76. | Matthew Dippel |
| 33. | Courtney Landreth | 77. | Mckayla Hopkins |
| 34. | Curtis Brown | 78. | Mckenna Mattson |
| 35. | Danielle Riches | 79. | Melissa Crawford |
| 36. | Devyn Brass | 80. | Nicholas L Sayles |
| 37. | Elias Rempalski | 81. | Nina Tocco |
| 38. | Emalee Degraff | 82. | Olivia Hallac |
| 39. | Emma Castillo | 83. | Rachel Kelly |
| 40. | Emma Knowlton | 84. | Rachel Wickman |
| 41. | Erica Sayles | 85. | Randi Bent |
| 42. | Halley Love | 86. | Rhyan Boeve |
| 43. | Hanna Bush | 87. | Sarah Hamilton |
| 44. | Hannah Nichols | 88. | Shelby Keyworth |

| | |
|---|---|
| 89.  Shelby Weller<br>90.  Taylor Kern<br>91.  Taylor Thie<br>92.  Tiesha Vogel<br>93.  Tiffany Fredricks | |

# Exhibit C

00124632.WPD



CLASS ACTION ADMINISTRATION

*Confidential*
Jennifer Keough - CEO
(206) 919-5768
jennifer.keough@jndla.com

**Brad Glazier, Esq.  | Bos & Glazier | bglazier@bosglazier.com**
*FLSA Settlement Administration*

## Assumptions and Notes:

1. Assumes 28 opt-in plaintiffs and 93 additional members
2. Email notice to entire collective (assumes 20% bounce back and receive notice by mail)
3. Mail 2-page notice to 24 collective members
4. Receive and process undeliverable mail (assumes 10% undeliverable of which 5% is forwarded)
5. Perform skip-tracing on undeliverable mail without forwarding address and remail (assumes 80% success rate)
6. Toll-free number with live operators (assumes 5% call rate and 3 min. per call)
7. Perform wage reporting in one state (MI)
8. Establish and manage Qualified Settlement Fund
9. Distribute settlement payments to collective members (assumes 121 checks with W2s/1099s)

|  |  |  |  |  |  | Cost Estimate |
|---|---|---|---|---|---|---|

**Call Center**
Set up toll-free number and IVR menu, answer and document calls; monthly and per-minute charges

|  |  |  |  |  |  | $ 350 |
|---|---|---|---|---|---|---|

**Database Management**

| Class list clean-up |  |  |  | $ 250 |  |  |
|---|---|---|---|---|---|---|
| Create project specific database; develop processing procedures |  |  |  | $ 250 |  |  |
|  |  |  |  |  | $ | 500 |

**Email Notice**
Create list for email, finalize content, implement email notice

| *Estimated Emails:* | 121 |  |  |  |  |  |
|---|---|---|---|---|---|---|
|  |  |  |  |  | $ | 300 |

**Mail Notice**
Print and mail notice

| Estimated items mailed |  | 24 |  |  |  |  |
|---|---|---|---|---|---|---|
| Printing/Materials/Mailing Services | $ 0.40 |  | $ 10 |  |  |  |
|  |  |  |  | $ 10 |  |  |
| Track undeliverables; remail forwards | $ 25 |  |  |  |  |  |
| Research undeliverables (skip-trace); remail | $ 25 |  |  |  |  |  |
|  |  |  |  | $ 50 |  |  |
|  |  |  |  |  | $ | 60 |

## Tax Reporting

Establish payroll account, set up employees; set up state tax accounts; close accounts; tax
reporting (state and federal); W-2s/1099s IRS submission; interact with state agencies regarding
tax returns and post-disbursement issues (e.g., child services, back taxes, unemployment, etc.)

| *States:* | 1 |  |  |  |  |  |
|---|---|---|---|---|---|---|
|  |  |  |  |  | $ | 450 |

**Distribute Benefits (with Form 1099 / W-2)**

| Calculate, review, and implement individual benefits |  |  |  | $ 300 |  |  |
|---|---|---|---|---|---|---|
| 1099 Reporting |  |  |  | $ 500 |  |  |
| Establish QSF/Tax ID; account setup and management; reconciliation |  |  |  | $ 500 |  |  |
| Create check language; design, format checks with 1099s/W-2s; manage mailing |  |  |  | $ 500 |  |  |

Printing and mailing costs

| Estimated Items Mailed |  | 121 |  |  |  |  |
|---|---|---|---|---|---|---|
| Printing/Materials/Mailing Services | $ 0.44 |  | $ 53 |  |  |  |
|  |  |  |  | $ 53 |  |  |
| Research undeliverables (skip-trace); remail; reissue checks |  |  | $ 50 |  |  |  |
|  |  |  |  |  | $ | 1,903 |

**Project Management**

Interaction with counsel, status reports, supervision of project team, format/quality review notice, resolution of issues, court report

| | Estimated Months: | 9 | | |
|---|---|---|---|---|
| | | | $ | 1,400 |
| | | **Sub-Total Fees** | $ | 4,963 |

**Expenses**

Expenses including but not limited to postage, shared P.O. Box ($25/month), hard-copy box storage ($1.50/box per month), copying ($0.20/page), electronic storage ($0.006 per image/record per month), NCOA, etc.

*Postage is estimated and JND will obtain best possible presort discounted rate.*

| | | | $ | 468 |
|---|---|---|---|---|
| | | **Sub-Total Expenses** | $ | 468 |
| | | **Total Fees & Expenses** | $ | 5,431 |



All services to be provided by JND Legal Administration ("JND") are subject to the following terms and conditions:

1. SERVICES: JND agrees to perform all services necessary to complete the tasks outlined in the applicable proposal or other documents or per its understanding about the Client assignment. Such Services do not in any way constitute legal services or advice.

2. PAYMENT: The Client agrees to pay JND for the Services as outlined in the Proposal or other agreement between the parties. Client agrees and understands that fees charged by JND may include mark-ups, commissions, or other arrangements constituting potential profits to JND. Client further agrees that the prices to be charged by JND were negotiated at arm's length and that total fees are estimates and that the actual amount charged may be greater or lesser than the estimated amounts. JND reserves the right to increase its hourly rates annually.

3. EXPENSES: JND shall also bill for all expenses reasonably incurred in connection with the Services. These expenses include but are not limited to postage, FedEx, P.O. Box rental ($150/month), travel, copies ($0.20 per copy), box storage ($1.50/box per month), brokerage fees, accounting fees, electronic storage ($0.006 per image/record), and other items associated with the Services. JND may receive rebates or credits from vendors in connection with volume of work performed for all of its Clients. JND may also receive financial benefits from banks or other institutions based on settlement funds on deposit. These credits/rebates/awards are solely the property of JND.

4. BILLING: JND shall invoice clients every 30 days and expect payment within thirty (30) days of receipt of invoices. Payment for postage and printing is due in advance of mailing. Invoices not paid within thirty (30) days will be subject to a 1.5% monthly finance charge.

5. INDEPENDENT CONTRACTOR: JND is performing its Services as an Independent Contractor and neither it nor its employees shall be deemed to be employees of the Client.

6. CONFIDENTIALITY: JND and the Client will each treat as confidential any documents shared by one party with the other. JND does not convey to the Client any right in the programs, systems, or methodologies used or provided by JND in the performance of this assignment.

7. DATA PRIVACY: JND Is committed to taking all reasonable steps to ensure the security of all client and claimant data entrusted to our care. We seek to protect confidential data in all of our engagements, including this one, regardless of the size of the matter or the amount of data at issue. Please see JND's complete Privacy Policy at www.jndla.com/privacy-policy regarding data collection and use.

8. LIMITATION OF DAMAGES: JND is not responsible to the Client for any special, consequential or incidental damages incurred by Client and any liability of JND to the Client shall not exceed the total amount billed to the Client for the particular Services that give rise to any loss.

9. FORCE MAJEURE: If any event out of the reasonable control of JND prevents JND's performance, such performance shall be excused.

10. NOTICE: Any notice required in connection with the Services shall be in writing and sent by registered mail or overnight courier. Such notice is deemed given if mailed five days after the date of deposit in the U.S. mail, or if sent by overnight courier, one business day after delivery to such courier.

11. GOVERNING LAW: This contract will be governed by and construed by the laws of the State of Washington.

12. ASSIGNMENT: This Agreement and the rights and obligations of JND and the Client shall inure to the benefit of their successors and assigns, if any.

13. TERMINATION: This Agreement may be terminated by the Client upon at least 30 days prior written notice to JND. The Client's obligation to pay for services or projects in progress at the time of notice of withdrawal shall continue throughout the 30 day period. JND may terminate this Agreement (i) with 10 days prior written notice if the Client is not current in payment of charges or (ii) in any event, upon at least three months prior written notice to the Client. If Client terminates this Agreement, JND shall have no obligation to release any information or documentation related to the applicable matter until JND has been paid in full.

# Exhibit D

00124632.WPD

| | Total | | Linkfield | Hodges | Kupe | Allen | Perezic | Crawford | Myers | Bendiner | Pontbriand | Maks | Prins |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Tip credit damages | $87,117.82 | | $16,092.22 | $14,675.09 | $1,099.86 | $6,303.48 | $1,128.60 | $3,111.90 | $7,011.11 | $4,836.72 | $1,390.96 | $4,383.41 | $1,289.25 |
| Unpaid cleaning hours | $6,931.75 | | $1,812.65 | $1,651.75 | $0.00 | $659.95 | $253.65 | $133.50 | $373.80 | $373.80 | $46.25 | $609.70 | $60.13 |
| Lost tips | $56,215.56 | | $13,011.24 | $10,298.64 | $290.84 | $5,232.04 | $1,141.58 | $2,356.86 | $3,197.04 | $2,294.38 | $496.32 | $2,831.40 | $518.98 |
| | | | | | | | | | | | | | |
| Total | $150,265.13 | Individual totals | $30,916.11 | $26,625.48 | $1,390.70 | $12,195.47 | $2,523.83 | $5,602.26 | $10,581.95 | $7,504.90 | $1,933.53 | $7,824.51 | $1,868.36 |
| | | 100.00% | 20.57% | 17.72% | 0.93% | 8.12% | 1.68% | 3.73% | 7.04% | 4.99% | 1.29% | 5.21% | 1.24% |
| | | | | | | | | | | | | | |
| Sum paid by settlement | $128,000.00 | | $128,000.00 | $26,335.20 | $22,680.32 | $1,184.64 | $10,388.44 | $2,149.87 | $4,772.16 | $9,013.99 | $6,392.88 | $1,647.03 | $6,665.14 | $1,591.52 |
| | | | | | | | | | | | | | |

| | Total | | Galloway | Tusch | Larson | Slocum | White | Wilson | Kelly | Bartos | Kellogg | Suppes | LeCompte |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Tip credit damages | $87,117.82 | | $4,574.48 | $2,237.57 | $734.87 | $6,176.25 | $1,682.75 | $939.72 | $246.39 | $451.24 | $1,845.81 | $673.28 | $835.15 |
| Unpaid cleaning hours | $6,931.75 | | $180.38 | $263.63 | $18.50 | $222.00 | $151.83 | $101.75 | $18.50 | | | | |
| Lost tips | $56,215.56 | | $3,366.88 | $1,152.36 | $160.16 | $2,827.00 | $1,650.88 | $374.00 | $55.88 | $131.78 | $1,221.00 | $258.06 | $388.52 |
| | | | | | | | | | | | | | |
| Total | $150,265.13 | Individual totals | $8,121.74 | $3,653.55 | $913.53 | $9,225.25 | $3,485.45 | $1,415.47 | $320.77 | $583.02 | $3,066.81 | $931.34 | $1,223.67 |
| | | 100.00% | 5.40% | 2.43% | 0.61% | 6.14% | 2.32% | 0.94% | 0.21% | 0.39% | 2.04% | 0.62% | 0.81% |
| | | | | | | | | | | | | | |
| Sum paid by settlement | $128,000.00 | | $128,000.00 | $6,918.32 | $3,112.20 | $778.17 | $7,858.32 | $2,969.00 | $1,205.74 | $273.24 | $496.63 | $2,612.39 | $793.34 | $1,042.35 |

| | Total | | | Samuels | Massop | Moore | Riccobono | Lowery | average |
|---|---|---|---|---|---|---|---|---|---|
| Tip credit damages | $87,117.82 | | | $2,567.07 | $2,322.69 | $507.99 | $0.00 | $0.00 | |
| Unpaid cleaning hours | $6,931.75 | | | | | | | | |
| Lost tips | $56,215.56 | | | $1,053.80 | $1,143.12 | $162.80 | $300.00 | $300.00 | |
| | | | | | | | | | |
| Total | $150,265.13 | | Individual totals | $3,620.87 | $3,465.81 | $670.79 | $300.00 | $300.00 | $5,565.38 |
| | | | 100.00% | 2.41% | 2.31% | 0.45% | 0.20% | 0.20% | |
| | | | | | | | | | |
| Sum paid by settlement | $128,000.00 | | $128,000.00 | $3,084.36 | $2,952.27 | $571.39 | $255.55 | $255.55 | |
| | | | | | | | | | |

# Exhibit E

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

————————————

SHANELL HODGES,                          Civil Action No.: 1:19-cv-00081
*On behalf of herself and*
*those similarly situated,*              HON. PAUL L. MALONEY
                                         MAG. JUDGE: RAY KENT

                          Plaintiff,

v.

77 GRANDVILLE, INC.,
a Michigan profit corporation, and
KRIS ELLIOTT and DAX HYLARIDES,
individuals,

                          Defendants.
_____

**<u>NOTICE OF RULE 23 CLASS ACTION SETTLEMENT</u>**

TO:    ALL SERVERS AND BARTENDERS WHO WORK OR WORKED FOR 77
       GRANDVILLE, INC. FROM FEBRUARY 4, 2016, THROUGH APRIL 15, 2020.

       You are receiving this notice in connection with the above-captioned lawsuit. This
notice explains the settlement of this lawsuit and your options.

       **1.    Introduction**

On February 4, 2019, Shanell Hodges ("Plaintiff") filed a lawsuit against 77 Grandville,
Inc., Kris Elliott, and Dax Hylarides ("Defendants") alleging violations of the Fair Labor
Standards Act ("FLSA") and Michigan state wage and hour laws, on behalf of herself and
other similarly situated servers and bartenders. A total of 27 bartenders and servers opted
into the lawsuit ("Opt-In Plaintiffs").  The claims made in the lawsuit include:

       (1)    servers and bartenders were required to contribute tips to non-tipped
              employees,
       (2)    Defendants failed to comply with federal and state tip credit provisions, and
       (3)    Defendants failed to pay closing workers for all hours worked.

Defendants deny the allegations in the lawsuit and assert that they did not violate any
wage and hour laws and deny that any damages are owed.

1

The Plaintiffs and Defendants have agreed to settle these claims. Plaintiffs' primary reason for entering into the settlement agreement is that it provides a substantial cash benefit to the class of servers and bartenders without the risk or delays of further litigation. The benefit provided under the Settlement must be balanced against the risk of a smaller recovery—or, indeed, no recovery at all—if this lawsuit proceeds, which includes the likelihood of appeals that could last many months, or even years, into the future. Defendants are entering in this Settlement to avoid the risk, uncertainty, burden, and expense of further litigation.

## 2.    The Settlement Terms

Under the Settlement, which the Court has preliminarily approved, the Defendants have agreed to pay $188,900 ("Settlement Amount") in exchange for the releases discussed in a Settlement Agreement. Defendants also agreed to pay the Opt-in Plaintiffs an additional confidential sum ("Confidential Amount"), subject to the terms of a Confidential Settlement and Release Agreement ("Confidential Agreement"). Together, the Settlement Amount and the Confidential Amount are the "Total Settlement Payment."

Defendants will pay the Total Settlement Payment to a Settlement Administrator who will be appointed by the Court. The Settlement Administrator will issue checks to Plaintiff, the Opt-In Plaintiffs, and those who receive this notice and do not opt out of the settlement. The settlement fund will also pay attorney fees in an amount that will not exceed $84,300, litigation costs of $5,000, and a service award to Plaintiff of $10,000. The settlement fund will also pay $7,000 to the Settlement administrator.

The Confidential Amount compensates the Opt-In Plaintiffs in exchange for a general release of all other employment related claims. The additional funds paid to the Opt-In Plaintiffs recognize their contribution to this lawsuit. The Opt-In Plaintiffs were active participants in the litigation, and by choosing to join the lawsuit, they were subject to the same requirements as Plaintiff. For example, they were subject to the requirements to respond under oath to interrogatories, to produce documents, to have their depositions taken, or to testify in court at a hearing or trial.

If you are not an Opt-In Plaintiff (*i.e.*, you did not file a notice of intent to join this suit), you are still entitled to receive a net payment of $200.00 under the Settlement.  These individuals are referred to in this notice as "Class Members." If you are an Opt-In Plaintiff (*i.e.*, you sent a notice to Plaintiff's counsel which was filed with the Court on your behalf), your payment will be determined by a review of records regarding your hours worked and tips received.

This Notice contains only a summary of the Settlement's terms. You may obtain a full copy of the Settlement Agreement by contacting the Claims Administrator, listed below.

## 3.    What are my options?

You have the following options:

| Action You Can Take | Details |
|---|---|
| Do Nothing | If you are not an Opt-In Plaintiff and do nothing, you will receive a payment as described above. You will release all claims asserted on your behalf arising under Michigan law. |
| Opt Out from the settlement by [30 days from the date the notice is sent]. | If you opt out of the Settlement, you waive any benefits due to you under the Settlement and you will not receive any payment as described above. You will not, however, be bound by the release and may be able to pursue your own individual claims against Defendants. To opt out, you must timely and properly submit an Opt-Out Notice described below by [____45 days from date the notice is sent]. |
| Object to the settlement by [30 days from the date of notice is sent]. | If you object to the proposed Settlement, in whole or in part, you may (but are not required to) write to the Court and explain why you object. You cannot object to the Settlement unless you are a Class Member and you did not previously submit a request to opt out from the Settlement. If you object to the Settlement, you must file a written objection with the Clerk of Court's Office as described below. If you submit a written objection by [45 days from the date notice is sent], you may (but do not have to) attend the Settlement Fairness Hearing and, at the discretion of the Court, may speak to the Court about your objection. |

### 4.    Why did I get this notice?

Records show that you currently or previously worked for Defendants as a server or bartender. The Court has authorized mailing of this notice regarding the settlement of a collective and class action lawsuit that may affect you. You have legal rights and options that you may exercise in this case. The lawsuit is titled *Hodges v. 77 Grandville, Inc., et al.*, Case No. 1:19-cv-00081-PLM-RSK and is filed in the United States District Court for the Western District of Michigan.

### 5.    Can my employer fire me or retaliate against me if I take part in the case?

The law strictly forbids any employer from retaliating against you for participating in the Lawsuit. Retaliation is illegal, and you could be entitled to additional money should a court determine that your employer took any adverse action against you because you joined this lawsuit. If you experience any retaliation, you should report it immediately to Class Counsel (identified below) or another attorney of your choice.

### 6.    How do I receive a payment?

To take part in this settlement, you do not need to do anything. The Claims Administrator will send you a check at the same address this Notice was sent to unless you notify the Claims Administrator of a new address.

If you do nothing, you will be bound by a release of Michigan state law claims as follows:

> Upon the Effective Date, the Named Plaintiff, Opt-in Plaintiffs, and Participating Class Members will release and forever discharge Defendants and each of their former and present predecessors, successors, parents, subsidiaries, divisions, insurers, board members, attorneys, and affiliates, whatever their current or former legal names or legal entity status, and each of their respective current and former owners, officers, directors, employees, partners, shareholders, and agents, and any other successors, assigns, or legal representatives ("Released Parties") from any and all claims, rights, demands, liabilities and causes of action arising during the Release Period under Michigan state and local wage and hour claims (including but not limited to claims under the common law (*e.g.*, breach of contract, unjust enrichment, etc.) and Michigan Workforce Opportunity Wage Act, M.C.L. § 408.411 *et seq*., and M.C.L. § 408.931 *et seq*.) relating to claims for unpaid wages, tip credit violations, unauthorized tip deductions, and tip credit notice claims, and based on facts asserted in the Lawsuit.

You will also be bound by a release of fees and costs, as follows:

> Upon the Effective Date, the Named Plaintiff, the Opt-in Plaintiffs, and the Participating Class Members irrevocably and unconditionally release, acquit, and forever discharge any claim that they have or may have had against the Released Parties for attorneys' fees, costs, or expenses associated with the Lawsuit, including but not limited to the attorneys' fees, costs, or expenses associated with Class Counsel's representation of the Named Plaintiff, Opt-in Plaintiffs, and Participating Class Members in the Lawsuit, except as specifically provided for in this Agreement. The Named Plaintiff, Opt-in Plaintiffs, and Participating Class Members further understand and agree that any fees and costs provided for in this Agreement are the full, final, and complete payment of all attorneys' fees, costs, and expenses associated with Class Counsel's representation in this Lawsuit.

### 7.    How do I opt-out of the settlement?

You can opt out of the settlement by mailing a timely and valid Opt-Out Notice to the class administrator addressed as follows:

Hodges v 77 Grandville Class Settlement
JND Class Action Administration
1100 2nd Ave, Suite 300,

4

Seattle, WA 98101.

To be timely, it must be received no later than 45 days after the Claim Forms were sent to you, which was _____, 2021. To be valid, the Opt-Out Notice must be signed and notarized and contain the following statement or a similar statement:

> I wish to opt out of the Settlement of the case, Hodges v. 77 Grandville, Inc. *et al.* I understand that by requesting to opt out from the Settlement, I will receive no money from the settlement funds created in accordance with the Settlement Agreement in this case. I understand that if I opt out from the class monetary settlement, I may be able to bring a separate action. I understand that in any separate lawsuit, I may receive nothing or less than I would have received had I filed a claim for money under the Settlement agreement in this case.

A Class Member who submits an Opt-Out Notice is not eligible to receive a share of the Settlement and will not release any claims. You should be aware that Fair Labor Standards Act claims are limited by a two or three-year statute of limitations, and Michigan wage and hour claims are limited by a three-year statute of limitations. Delay in joining this case, or proceeding separately, may result in some or all of your claims expiring as a matter of law. If you pursue your claims elsewhere, you may be awarded a lesser amount than your award in this settlement, a greater amount than your award, or $0.

## 8.    How do I object to the Settlement?

Class Members may also object to the Settlement in whole or in part. Objections must be made in writing and filed, together with copies of all papers and briefs supporting the objection, with the Clerk of Court on or before [60 days from the date of mailing]. You must also serve the papers on Class Counsel and Defendants' Counsel at the addresses below so that the papers are received on or before _____.

| Clerk's Office | Class Counsel | Defendants' Counsel |
|---|---|---|
| Thomas L. Dorwin, Clerk 399 Federal Building 110 Michigan NW Grand Rapids, Mich. 49503 Phone: (616) 456-2381 | Bradley K. Glazier Robert M. Howard Bos & Glazier, PLC 990 Monroe Ave NW Grand Rapids, MI 49503 (616) 458-6814 | Matthew M. O'Rourke MILLER JOHNSON Attorneys for Defendants 45 Ottawa Avenue, S.W., Ste. 1100 Grand Rapids, MI 49503 (616) 831-1700 John W. Inhulsen INHULSEN LAW, P.L.C. Attorney for Defendants 3351 Claystone St. SE #104 Grand Rapids, MI 49546 (616) 747-0000 |

Any objection to the Settlement must (a) state the name, address, and telephone number of the person or entity objecting and must be signed by the objector, (b) contain a statement of the Class Member's objection(s) and the specific reasons for each objection, including any legal or evidentiary support the Class Member wishes to bring to the Court's attention, and (c) must include documents sufficient to prove the objector's membership in the Class, such as proof of employment. You may not object to the Settlement if you are not a Class Member. If you do not comply with these requirements prior to _____, you waive your right to object to the settlement.

You may file a written objection without having to appear at the Settlement Fairness Hearing. You may not, however, appear at the Settlement Fairness Hearing to present your objections unless you first filed and served a written objection in accordance with the procedures described above, unless the Court orders otherwise.

If you wish to be heard orally at the hearing in opposition to the approval of the Settlement, and if you file and serve a timely written objection as described above, you must also file a notice of appearance with the Clerk's Office and serve it on Class Counsel and Defendants' Counsel at the addresses set forth above so that it is received on or before _____. Persons who intend to object and desire to present evidence at the Settlement Fairness Hearing must include in their written objection or notice of appearance the identity of any witnesses they may call to testify and exhibits they intend to introduce into evidence at the hearing. Such persons may be heard orally at the discretion of the Court.

You are not required to hire an attorney to represent you in making written objections or in appearing at the Settlement Fairness Hearing. However, if you decide to hire an attorney, it will be at your own expense, and that attorney must file a notice of appearance with the Court and serve it on Class Counsel and Defendants' Counsel at the addresses set forth above so that the notice is received on or before _____. The Settlement Fairness Hearing may be adjourned by the Court without further written notice to the Class. Unless the Court orders otherwise, any Class Member who does not object in the manner described above will be deemed to have waived any objection and shall be forever foreclosed from making any objection to the proposed Settlement.

### 9.    Do I have a lawyer in this case?

Plaintiff, the Opt-in Plaintiffs, and the Class Members who do not properly opt-out are represented by Bradley K. Glazier and Robert M. Howard of Bos & Glazier, P.L.C., 990 Monroe Avenue, N.W., Grand Rapids, MI 49503.

If you have questions or need additional information, please contact Plaintiffs' Counsel at 616-458-6814 or rhoward@bosglazier.com.

### 10.    How will the lawyers be paid? How will costs be paid?

Class Counsel has not received payment of any attorney's fees or expenses incurred in representing Plaintiff, the Opt-In Plaintiffs, or Class Members. Per Class Counsel's representation agreement with Plaintiff and under the terms of the Settlement Agreement, Class Counsel intends to ask that the Court for an attorneys' fees award of $84,300, paid from the Settlement Amount. Costs of claims administration for the Settlement Amount and Class Counsel's expenses will come out of the Settlement Amount. In addition, Class Counsel will seek a service award of $10,000 for Plaintiff Shanell Hodges (Bosch). If approved, this amount will come from the Settlement Amount. The Court has preliminarily approved Class Counsel's request for attorneys' fees, expenses, and the service award. You may also hire your own attorney to represent you in this matter. If you do, it will be at your own expense.

**11.    When and where will the Court decide whether to approve the Settlement?**

The Court will determine whether to approve this Settlement. In order to do so, the Court will conduct a Settlement Fairness Hearing on _____ at the United States Courthouse located at 107 Federal Bldg, 410 W Michigan Ave, Kalamazoo MI 49007before Judge Paul L. Maloney. Although you may attend this hearing, you do not need to attend this hearing in order to participate in the Settlement. At the hearing, the Court will determine:

(a)    Whether the proposed settlement is fair, reasonable, and adequate;

(b)    whether the lawsuit should be dismissed with prejudice;

(c)    whether Class Counsel's request for an award of attorney's fees and expenses should be finally approved; and

(d)    any other relief that the Court deems necessary.

The Court may approve the Settlement and/or any other related matter at or after the Settlement Fairness Hearing without further notice to Class Members.

Please direct any questions regarding this Notice to the Claims Administrator or Class Counsel:

Claims Administrator
Hodges v 77 Grandville Class Settlement
JND Class Action Administration
1100 2nd Ave, Suite 300, Seattle, WA 98101
206.709.6434

Class Counsel
Bradley K. Glazier
Robert M. Howard
Bos & Glazier, PLC
990 Monroe Ave NW
Grand Rapids, MI 49503

(616) 458-6814
rhoward@bosglazier.com

### 12.    Please keep your address current.

If you do return a claim form, you will be mailed a check for your portion of the Settlement Fund. For that reason, it is important that you keep you mailing address current. If your mailing address changes, please inform the Claims Administrator.

### 13.    What happens if I don't receive or cash my check?

Settlement checks will be mailed following the Court's order granting final approval of the settlement, which could occur on the date of the Settlement Fairness Hearing described above, or at a later date. Therefore, you should not expect to receive a check before _____, 2021. Checks will be void after 90 days after date they are issued. If you do not receive your check and/or fail to cash it within 90 days, you may contact the Claims Administrator to issue another check to you. This option will be available for 180 days after the date the checks are first issued, after which time you will not receive a replacement check.